PUBLIC SERVICE COMMISSION v. KANSAS CITY POWER & LIGHT COMPANY, Appellant.—31 S. W. (2d) 67.

Court en Banc, September 3, 1930.

*Johnson, Lucas, Landon & Graves, William C. Lucas* and *Ludwick Graves* for appellant.

*D. D. McDonald* and *J. P. Painter* for respondent.

FRANK, J.—The Public Service Commission, plaintiff below, brought this action in the Circuit Court of Cole County to enjoin the Kansas City Power & Light Company from rendering electric service to the public over a six-mile extension of said company's transmission lines which was constructed without authority from the Public Service Commission and for which no certificate of convenience and necessity was issued by said commission.

Defendant's demurrer to plaintiff's petition was overruled, and defendant declining to further plead, judgment was rendered enjoining defendant from the operation or use of said transmission line until such time as it applied for and received from the commission a certificate of convenience and necessity therefor and authority from said commission to furnish electric service over said line. Defendant appealed.

The petition, omitting caption and formal parts, is as follows:

"That the defendant is a corporation organized and existing under and by virtue of the laws of the State of Missouri and is the owner and operator of electric plants located in Kansas City, Missouri, and serves the community of Kansas City and surrounding territory with electrical energy from its generating plants at Kansas City, Missouri; that the defendant did obtain from this Commission a permission and approval for the construction and operation of its electrical plants, and a certificate of convenience and necessity therefor, as required by Section 10481, Revised Statutes 1919, and has secured permissions, approvals and certificates of convenience and necessity for all of its transmission lines and extensions thereof except the extension here in controversy.

"Plaintiff states that by the provisions of said Public Service Commission Law it is given jurisdiction and supervision over the rates, service and electric plants and distribution system of said defendant, with power and authority to supervise and regulate said rates and charges and to require said defendant to render safe, adequate and sufficient service.

"Plaintiff states that by the provisions of said Public Service Commission Law, it is given jurisdiction, supervision, power and authority over the rates, charges and service, with power and authority to supervise and regulate the rates and service of telephone and telegraph companies or corporations, and jurisdiction, supervision, power and authority to regulate the service over their lines and systems in the State of Missouri, and to require said telephone and telegraph companies to render safe, adequate and sufficient service.

"Plaintiff states that by the provisions of said Public Service Commission Law, it is given jurisdiction, supervision and authority to require of electrical corporations in the construction of electrical transmission lines that they be built according to certain standards, depending on the voltage of electricity so transported, in order to

prevent the destruction of telephonic and telegraphic communication by inductive interference.

"Plaintiff states that certain telephone lines and systems will be injuriously affected by inductive interference from the said extension of transmission line herein complained of, so that adequate service cannot be had over the telephone lines and systems so interfered with when electrical energy is being transported over the transmission line herein complained of.

"Plaintiff further states that under the provisions of the Public Service Commission Law, it is the duty of all electric corporations owning and operating electric plants or systems to apply to the Public Service Commission of Missouri for a certificate of convenience and necessity, permission and approval, to extend its transmission lines and electric service by any additions and extensions not covered by previous certificates of convenience and necessity, but plaintiff says that the defendant in violation of its duty as aforesaid and in violation of the provisions of law of the Public Service Commission Act has extended its transmission lines and service beyond the permission it has heretofore received and is now supplying, or threatening to supply, electric energy over transmission lines that have not been authorized by the Public Service Commission and no certificate therefor has been issued by said Commission. Said transmission line extending from Fairville in the County of Saline to Miami in the County of Saline, all in the State of Missouri; the said transmission line being an extension of an existing transmission line which was duly authorized by plaintiff Commission.

"Plaintiff further states that it has no adequate remedy at law and institutes this proceeding under the provision of the Public Service Commission Law and more particularly the provision of Section 10493, Revised Statutes 1919."

The parties stipulated that as "electrical interference," was an issue in the case, and is not a subject of general knowledge, the court, in determining the demurrer to the petition, might consider the following as defining "inductive interference" and the methods of eradicating it.

"A telephone circuit requires a complete path for the flow of the message current. The path may be two metallic wires, one for the flow of the current as it goes out and the other for the return of the message current, or the path may be made up of a metallic wire for the current as it goes out and the use of the earth for the other path for the returning current.

"If the wires which comprise one or both paths of the telephone circuit parallel a power circuit in comparatively close proximity, the electricity in the power circuit through the magnetic field caused by the electricity in the power circuit may produce in the telephone wires a flow of electricity. The flow of this electricity in the telephone wires

will be in one and the same direction. If the telephone circuit is a metallic circuit, that is has two wires, the current flowing in each wire will tend to neutralize one another, in many instances causing no serious interference with the telephone service. If the two telephone wires parallel the power circuit a long distance, the electricity caused to flow in the nearer wire may be greater than the electricity flowing in the other so that the result is that there is an interference with the telephone service. This interference is known as inductive interference.

"If the telephone circuit is made up of one wire and the earth, the electricity in the power circuit will produce a greater flow of electricity in the telephone wire, due to its closer proximity to the power circuit, than in the earth, thereby causing a greater amount of electricity in one part of the circuit than in the other and resulting in interference with the telephone service in the same manner as above. This in the same way is known as inductive interference. Since there can be no transposition of the wire with that of the earth, there is no way to balance the current flowing in the wire with that of flowing in the earth, thereby removing the inductive interference. To remove the inductive interference requires making the telephone circuit metallic and probably transposition of the two wires at proper places as mentioned above.

"The manner in which inductive interference shows itself in telephonic communication is by a buzzing sound discernible when talking over a telephone circuit thus affected."

Defendant's demurrer to the petition is bottomed on the grounds, (1) that the petition does not state facts sufficient to constitute a cause of action; (2) that it appears from the face of the petition that defendant complied with Section 10481, Revised Statutes 1919, by obtaining a certificate of convenience and necessity for the construction of its electrical plant; (3) that the commission has no power or authority to require that electrical transmission lines be built according to certain standards in order to prevent anticipated inductive interference with telephone lines, or require a certificate of convenience and necessity for the extension of transmission lines in order to require that they be constructed so as to prevent such interference; and (4) that the question of damages to a telephone line caused by inductive interference from an electric transmission line is a judicial one of which the commission has no jurisdiction.

The petition alleges that appellant obtained from the commission permission and approval for the construction and operation of its electrical plants, and a certificate of convenience and necessity therefor as required by Section 10481, Revised Statutes 1919, and has secured permissions, approvals and certificates of convenience and necessity for all of its transmission lines and extensions thereof except the extension here in controversy.

Section 10481 of the statute provides that no electrical corporation shall begin construction of an electrical plant without first having obtained the permission and approval of the commission, and no such corporation shall exercise any right or privilege under any franchise hereafter granted, without first having obtained the permission and approval of the commission.

Appellant contends that neither Section 10481 nor any other statute requires a certificate of convenience and necessity or permission from the commission to construct and operate an extension of an existing transmission line. Contention is also made that a proper construction of Section 10481 of the statute demonstrates a clear intent on the part of the Legislature to require a certificate of public convenience and necessity only when an electrical corporation starts in business, or at most thereafter when it receives a new franchise from public authority to operate in entirely new territory.

It is true that Section 10481 does not, in express terms, require a certificate of convenience and necessity or permission and approval of the commission to construct and operate an extension to an existing electrical transmission line, but this section of the statute must be read and construed in connection with other pertinent provisions of the Public Service Commission Act, and if it reasonably appears from a fair interpretation of all the statutes touching this question that it was the intention of the Legislature to make such a requirement, that intention should govern.

Section 10412, Revised Statutes 1919, provides that, "A public service commission is hereby created and established, which said public service commission shall be vested with and possessed of the powers and duties in this chapter specified, *and also all powers necessary or proper to enable it to carry out fully and effectually all the purposes of this chapter.*" (Italics ours.)

The Public Service Commission Act provides a complete system for the regulation of public utilities by the commission. [State ex inf. v. Gas Co., 254 Mo. 515, 534, 163 S. W. 854; State ex rel. Public Service Commission v. Mo. Southern Ry. Co., 279 Mo. 455, 464, 214 S. W. 381.] Without lengthening this opinion with a summary of all statutes which vest authority in the Public Service Commission to regulate public utilities and their activities, we refer the reader to Sections 10410 to 10434 and Sections 10476 to 10494, Revised Statutes 1919.

In the two cases above cited the Public Service Commission Act is reviewed and construed. In State ex inf. v. Gas Co., we said:

"That act is an elaborate law bottomed on the police power. It evidences a public policy hammered out on the anvil of public discussion. It apparently recognizes certain generally accepted economic principles and conditions, to-wit, that a public utility . . . is in its nature a monopoly; that competition is inadequate to represent the public, and, if it exists, it is likely to become an economic waste;

that state regulation takes the place of and stands for competition; that such regulation, to command respect from patron or utility-owner, must be in the name of the overlord, the State, and to be effective must possess the power of intelligent visitation and the plenary supervision of every business feature to be finally (however invisibly) reflected in rates and quality of service. It recognizes that every expenditure, every dereliction, every share of stock or bond or note issued as surely is finally reflected in rates and quality of service to the public, as does the moisture which arises in the atmosphere finally descend in rain upon the just and unjust. *Willy nilly.*"

In State ex rel. Public Service Commission v. Ry. Co., supra, we said: "The act adds to the powers expressly given to the Commission all others necessary to the full and effectual exercise of those powers. All rates, fares, facilities, service and equipment, and changes therein, fall within the authority of the Commission. Adequate service and facilities are expressly required to be furnished. Questions relative to these things are to be determined by the Commission."

We call attention to a few of the many powers given to the commission by the Public Service Commission Act. Subsection two of Section 10478, Revised Statutes 1919, authorizes the commission to investigate and ascertain, from time to time the methods employed by corporations and persons in manufacturing, distributing and supplying electricity for light, heat or power and in transmitting same; to order such reasonable improvements as will best promote the public interest, preserve the public health and protect those using electricity and those employed in the manufacture or distribution thereof, and to order reasonable improvements and extensions of the works, wires, poles, pipe lines, conduits, ducts and other reasonable devices, apparatus and property of electrical corporations. Subsection 5 of the same section of the statute authorizes the commission to examine all persons and corporations under its supervision and keep informed as to the methods, practices, regulations and property employed by them in the transaction of their business, determine and prescribe the rates to be charged by such utilities, and whenever it is found necessary, determine and prescribe the safe, sufficient and adequate property, equipment and appliances thereafter to be used, maintained and operated for the security and accommodation of the public and in compliance with the law and of their franchises and charters. Section 10481 provides that no electrical corporation shall begin the construction of an electric plant or exercise any of the privileges granted under any franchise without permission and approval of the commission. This section further provides that if the commission determines that the exercise of such right, privilege or franchise is necessary or convenient for the public service, it may grant permission for the exercise of such right upon such condition or conditions as it may deem reasonable and necessary. Other sections of the statute provide

a complete scheme for the supervision and regulation of all the activities of an electrical utility by the commission. Additional powers are given the commission by Section 10427, Revised Statutes 1919. This section reads:

"The commission shall have power, after a hearing had upon its own motion or upon complaint, by general or special orders, rules or regulations, or otherwise, to require every person, corporation and public utility, to maintain and operate its line, plant, system, equipment, apparatus, tracks and premises in such manner as to promote and safeguard the health and safety of its employees, passengers, customers and the public, and to this end to prescribe, among other things, the installation, use, maintenance and operation of appropriate safety and other devices or appliances, including interlocking and other protective devices at grade crossings or junctions and block and other systems of signaling, to establish uniform or other standards of equipment, and to require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand."

The act itself provides that it shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities. [Sec. 10538, R. S. 1919.]

A reasonable construction of the Public Service Commission Act forces the conclusion that it was the intention of the Legislature to clothe the commission with exclusive authority to determine whether or not the furnishing of electricity to a given town or community is a public necessity or necessary for public convenience, and if so, to prescribe safe, efficient and adequate property, equipment and appliances in order to furnish adequate service at reasonable rates and at the same time safeguard the lives and property of the general public, those using the electricity and those engaged in the manufacture and distribution thereof.

If, as appellant contends, an electrical corporation which has a certificate of convenience and necessity to operate its plant in a given town or community might extend its lines to and furnish other communities with electricity without a certificate or authority from the commission, the purpose of the statute would be defeated. Under such a construction of the statute, the commission would have no opportunity to determine whether or not public convenience and necessity demanded the use of electricity in the community to which the line was extended, and no opportunity to prescribe the safe and efficient construction of said extension or determine whether or not appellant was financially able to construct, equip and operate such extension and furnish adequate service at reasonable rates in the new community, without crippling the service in the community where the commission had theretofore authorized it to operate.

Appellant, however, contends that there is no question of new territory or new franchise in this case; that it has had a franchise in Saline County for many years and has been operating there under authority of the commission. There is no merit in this contention. In the first place a franchise in Saline County would not authorize appellant to operate there without authority from the commission. [Sec. 10481, R. S. 1919.] In the next place, this case is here on a demurrer to the petition and the sufficiency of the petition must be determined by the facts alleged therein. The petition does not allege that the commission authorized appellant to operate in Saline County, or authorized the construction of the line in question. On the contrary the petition alleges that the line in question which extends from Fairville to Miami in Saline County was not authorized by the commission. Appellant's demurrer to the petition admits this fact to be true. We therefore rule this contention against appellant.

Appellant relies on the case of Missouri Valley Realty Co. et al., 2 Public Service Commission Reports (Mo.) 1, in support of its contention that where a utility is operating under authority from the commission, it may extend its lines without obtaining a certificate of convenience and necessity from the commission. The facts in that case were that the power company was lawfully authorized to operate its plant in the city of St. Louis. The question presented was whether or not the company could extend its lines within the limits of the city without authority from the commission so to do. In course of the report, the commission said:

"The law is prospective in its operation and the defendants being engaged in business and serving the public with a plant already constructed when the law went into effect were not required to obtain a certificate of permission and approval from the Commission, and where the utility is legally serving the public, whether under a certificate from this Commission, or being exempt from that requirement, as in the case of defendants, we do not think the law requires such a certificate for every extension of its lines upon each street or alley where service may thereafter be desired. Consent of the municipality is always required as a condition precedent to the granting of a certificate of permission and approval by this Commission; but when a local board or officer is given authority by ordinance or franchise to control the location and placing of poles, conduits, wires, etc., on streets and alleys, and exercises such authority by granting a permit to the utility, the law does not contemplate that for every such permit a certificate shall be secured from this Commission."

We interpret the report as holding that the power company was lawfully authorized to operate its plant in the city of St. Louis and was not required to obtain additional certificates for extensions of its lines in the territory where it already had authority to operate. If this report should be construed as holding that a public utility which

is lawfully authorized to operate in a given territory, may extend its operations beyond the limits of such territory without first obtaining authority from the commission so to do, it would not be good law and should not be followed.

It is next contended that the commission has no authority to require that an electrical line be constructed in accordance with certain standards in order to prevent anticipated electrical interference with a telephone line.

By the terms of the Public Service Commission Act, the commission is given authority to supervise and regulate both electrical and telephone corporations and require each to render adequate and efficient service to the public. Where, as here, it is proposed that a high-power electrical transmission line be constructed and operated in such close proximity to a telephone line as to injuriously affect its operation by inductive interference from the electrical line, it is for the commission in the first instance, to determine whether or not the proposed electrical line is a public necessity, and if so, whether it could, at reasonable expense, be constructed in such manner and at such distance from the telephone line as not to injuriously affect the telephone service, especially so in view of the authority given the commission by Section 10481, Revised Statutes 1919. That section provides that when the commission grants a certificate of convenience and necessity to an electrical corporation, *it may by its order impose such condition or conditions as it may deem reasonable and necessary.* The commission of this State has granted permission to electrical companies to construct, operate and maintain their lines in an adequate and safe manner so as not to reasonably interfere with the service furnished by any other public utility. [In Re Caruthersville & Kennett E. L. & P. Co., 5 Public Service Commission Report, 158.]

Appellant's next and last contention is that the question of damages to telephone service by inductive interference and the cost of its eradication is a matter of assessment of damages and injunction, of which the courts and not the commission has jurisdiction.

True the commission is not a court and does not have jurisdiction to determine judicial questions, but the determination of how and where an electrical line should be built so as not to unreasonably interfere with telephone service, is not a judicial question. The statute commits the determination of that question to the commission by authorizing it to supervise and regulate the construction and operation of both telephone and electrical lines and empowering it to grant permission for the construction of such lines on such conditions as it may deem reasonable and necessary. If orders made by the commission in that behalf should be unreasonable or unlawful, they would be subject to judicial review. It may be that if an electrical utility should, without authority of law, build a high-power transmission line in close proximity to a telephone line and thus destroy telephone serv-

ice, the telephone company could either sue for damages or enjoin the operation of the electrical line, but that is not the question in this case.

We find no reversible error in the record and accordingly affirm the judgment. All concur, except *Walker, J.*, absent.