STATE ex rel. DONIPHAN TELEPHONE
COMPANY, Plaintiff-Appellant,

v.

PUBLIC SERVICE COMMISSION,
Defendant-Respondent.

No. 23950.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Forrest C. Donnell, St. Louis, for appellant.

Glenn D. Evans and Thomas J. Downey, Jefferson City, for respondent.

CROSS, Judge.

This is an appeal from the judgment of the Circuit Court of Cole County affirming orders issued by the Public Service Commission in its Case No. 14,399, directing the Southwestern Bell Telephone Company to furnish telephone service in an area, located in Madison County, known as the "Three Mile Strip". The case originated upon the petition of residents of the area requesting that they be afforded telephone service by Bell. In proceedings before the Commission the petitioners were opposed by Bell and also by respondent Doniphan Telephone Company. The circuit court reviewed the Commission's orders pursuant to Doniphan's application for a writ of certiorari or review. No review was sought by Bell. Doniphan alone has appealed from the circuit court's judgment of affirmance.

The appeal was originally directed to the Supreme Court. Doniphan attempted to invoke that court's jurisdiction on grounds that the case involves the construction of the Constitution of the United States and the Constitution of the State of Missouri. The Supreme Court determined that the appeal presented no issue which would require construction of a constitutional provision and that there did not appear to be any other basis for vesting jurisdiction in that court. Accordingly, the case wase transferred to this court. See, State ex rel. Doniphan Telephone Company v. Public Service Commission of Missouri, Mo.Sup., 369 S.W.2d 572.

This proceeding was commenced before the Commission on January 4, 1960, by the filing of an informal petition signed by W. R. Meyers and 48 other residents of the three mile strip, in which they stated that they had no telephone service, that they wished to have telephone service in their area and that it was their desire to have such service rendered to them by Bell through its Fredericktown exchange because they lived close to and transacted most of their business in the Fredericktown community.

The three mile strip is a narrow piece of land, three miles deep, running along the extreme southern boundary of Madison County, beginning three miles east of Iron County and running east for a distance of 17½ miles. Fredericktown and Marquand are the two principal cities of Madison County, the former being the county seat. The greater portion of Madison County receives telephone service from Bell out of its exchange operated at Fredericktown. Bell's Madison County service area extends southward to the three mile strip but does not include it, although Bell has maintained five toll stations in the three mile strip for several years. Bell's lines and service facilities extend at some points to within 100 yards of the three mile strip.

The Doniphan Company operates in several counties out of several exchanges. On July 9, 1951, the Commission granted Doniphan a certificate of convenience and necessity to render telephone service, among other places, in the town of Greenville and adjacent territory which included "that part of Wayne County north of Greenville to the Madison County line". Some years later Doniphan's president, Dee A. Rice, made a "visual survey" of the three mile strip area by driving over the territory, observing the houses and farms and talking to the people. On the basis of the survey, and on November 21, 1957, Doniphan filed with the Commission a "map" of the three mile strip with a schedule of rates applicable thereto. This was done without notice to the residents of the area, without a hearing, and without any accompanying or ensuing order issued by the Commission thereon. It is Doniphan's claim that by so filing the map of the three mile strip, that territory became a part of its certificated Greenville Exchange area. Doniphan has never rendered telephone service in the three mile strip and has not offered to furnish such service. Its nearest telephone line is nineteen miles distant from the area.

The Commission treated the petition filed herein as a complaint, and, upon due notice to Bell and Doniphan, held two formal hearings in which both companies participated and opposed the petitioners. At the first hearing petitioners adduced evidence showing that: the residents of the three mile strip have never had telephone service; Fredericktown is the county seat of Madison County and is serviced by Bell; the Bell also services Marquand and its community; a majority of petitioners are employed in Fredericktown or Marquand and transact substantially all of their business and do their banking in those towns; they receive their police and fire protection and their medical, ambulance and undertaking services from Federicktown and Marquand; their children go to school at Marquand; petitioners desire telephone service but do not want to be served by Doniphan because, in that event, most of their calls to points within their own county would be "long distance" and require a toll charge; instead, it is their desire to be served by Bell through the Fredericktown exchange.

Doniphan took the position at the hearing that the Commission should not order Bell to service the three mile strip area, and urged the Commission to hold the entire proceeding in abeyance until such time as it would take to put into effect a proposed program of general expansion, referred to by Doniphan as its "Comprehensive Plan". Under this project Doniphan planned to add several exchanges in its territory, construct 250 additional miles of line and install certain new equipment, including several microwave stations and "modern" dial equipment. In order to effect this plan it was necessary that Bell and the American Telephone and Telegraph Company make certain "physical connections" with Doniphan's lines. It was shown by Doniphan that it had filed a petition with the Federal Communications Commission praying for an order upon Bell and American requiring them to make the desired "physical connections". The application is opposed by Bell, is still pending, and has not been docketed for hearing. Doniphan also has on file an application to the Rural Electrification Administration for a loan of $1,000,000.00 which is

necessary to carry out the Comprehensive Plan.

Doniphan represented to the Commission that if the Federal Communications Commission sustained its application and ordered Bell and American to make the necessary physical connections, and if Doniphan obtained the $1,000,000.00 loan from the Rural Electrification Administration, then, at some future time when the Comprehensive Plan might be completed and put into effect, Doniphan could provide telephone service in the three mile strip. This service would be furnished through a proposed new exchange in the one-store village of Clubb.

Otherwise, and under the conditions then presently existing, Doniphan could offer no practical plans for serving the area. Doniphan's President Rice testified that the cost of extending telephone facilities into the three mile strip would exceed the revenue that would be derived from the extension and that the company would be reluctant to furnish telephone service to petitioners under existing rules and conditions "because it would be a losing proposition to us at the very best" and because "it would be a heavy burden on the subscribers". Rice admitted that construction cost charges might run as high as $500.00 or $1000.00 to each patron. He was unable to say "how long it would be before we would be able to offer them service".

On August 10, 1960, the Commission issued a preliminary order directing Bell to make a survey of the area referred to as the three mile strip to determine the number of people who would actually become subscribers to Bell's service, and to determine, in general, the feasibility of rendering that service to such subscribers. The order further provided that the Commission retain jurisdiction for the purpose of granting a certificate of convenience and necessity to Bell "if, in the opinion of the Commission, such service is found to be feasible and not confiscatory to that company".

At a second hearing, held on February 20, 1961, Bell's report was received and entered of record and further evidence was heard, directed principally to the question of the feasibility and cost of extending Bell's lines into the three mile strip and the rendition of telephone service therein by that company. It developed from the evidence that Bell owns unused transmission line facilities sufficiently close to the three mile strip that it can further extend those facilities into that area and furnish service to petitioners without requiring them to make contributions in aid of construction. Following this hearing, and on May 19, 1961, the Commission entered a supplemental order directing Bell "to make use of its present unused facilities located along Highway 67, or in the Marquand area, in the southern part of Madison County and provide facilities in connection therewith to render telephone service to the Complainants therein located in the Three Mile Strip and furnish toll and Fredericktown Exchange service to said Complainants under the same conditions and rates that are now in effect throughout the Fredericktown Rural Exchange area".

Doniphan complains here, as it has in prior proceedings, that the action taken by the Commission "was unreasonable and unlawful and impairs the constitutional rights of Doniphan Telephone Company". These contentions will be disposed of without deciding any constitutional question. In transferring the case to this court, the Supreme Court said: "It is not necessary to construe any constitutional provision in order to determine that contention. It may be decided by a construction of the applicable statutes for the purpose of ascertaining whether the Commission exceeded its authority in making the orders". State ex rel. Doniphan Telephone Company v. Public Service Commission of Missouri, supra.

▬ The orders of the Commission in this case are prima facie lawful and reasonable. Section 386.270 V.A.M.S.; State ex rel. Egan v. Public Service Commission,

Mo.App., 319 S.W.2d 917. As the complaining party prosecuting this appeal, Doniphan carries the burden to make a convincing showing that the orders complained of are unreasonable or unlawful. Section 386.430 V.A.M.S.; State ex rel. Chicago, Rock Island & Pacific Railroad Company v. Public Service Commission, Mo.Sup., 312 S.W.2d 791. The issues raised on this appeal are not triable de novo by this court. The reviewable question before us is whether the Commission's orders are reasonable and lawful. Section 386.510 V.A.M.S.; State ex rel. City of West Plains v. Public Service Commission et al., Mo.Sup., 310 S.W.2d 925.

This appeal is squarely founded on the theory and premise that Doniphan is vested with a "property right" in the three mile strip, to-wit, the exclusive authority to render telephone service in that area, and that the Commission's orders upon Bell to serve the area constitute an unlawful impingement upon that right and wrongfully deprive Doniphan of its "property". In support of this proposition Doniphan argues that "The law contemplates monopoly operation of a telephone exchange in a given area", and that "a certificate of convenience and necessity is not to be granted to another company for a territory which is already furnished adequate telephone service by a company over which the Public Service Commission has full jurisdiction". Although conceding that the law does not vouchsafe a monopoly to the system which is already in the field, and that the law would favor the granting of identical authority to another utility to enter the same area if the utility which had pre-empted that area should be negligent, remiss or derelict in its duty to render service, Doniphan submits there has been no showing of negligence, remissness or dereliction on its part in discharging the trust it holds to afford telephone service. Therefore, says Doniphan, since there has been no forfeiture of its right to serve the subject area without competition, the Commission is not legally justified in directing Bell to enter and serve the territory.

All the foregoing directs inquiry to this fundamental question: What legal authority, if any, has been granted Doniphan to render its service in the three mile strip? Doniphan's claim to the area is expressed in these words, quoted from its brief: "By order dated July 9, 1951, Doniphan Telephone Company was granted a Certificate of Public Convenience and Necessity to own, maintain and operate the Greenville exchange * * *. By the filing with the Public Service Commission of Map effective November 21, 1957, the Three Mile Strip was placed in the Greenville exchange of said company". It is not disputed that on July 9, 1951, the Commission granted Doniphan a certificate of convenience and necessity for the Greenville exchange area, and that such certificate did not include the three mile strip. It is also a matter of record that on November 21, 1957, Doniphan filed a map of the three mile strip in the office of the Commission. It further appears from Doniphan's own evidence that other than the affixation of its filing stamp, the Commission performed no act or made any order in respect to the map. There was no notice of the filing given to any person or utility and no hearing was held. It is argued by Doniphan (1) that the affixation of the filing stamp constituted approval of the map by the Commission and that thereby the three mile strip delineated thereon was placed in the Greenville exchange area and became a part thereof, and (2) that the Commission recognized such annexation by incorporating in its conclusions the clause "when this territory was placed in the Greenville exchange by the practice of filing a map including the area to be added * * ". Summarizing, it may be said that Doniphan's claim of authority to serve the three mile strip rests solely upon two factors, to-wit: (1) the fact that in 1951 it was granted a certificate for its Greenville area (which did not include the three mile strip), and (2) the act of filing a map of the three mile strip in 1957.

It is not the law that a telephone utility is privileged to annex additional ter-

ritory to its certificated service area by the simple act of filing a map. The legislature provided otherwise by its enactment of the Public Service Commission Law. That body of statutes provides a complete system of law for the regulation of public utilities by the commission it has created. Public Service Commission v. Kansas City Power & Light Co., 325 Mo. 1217, 31 S.W.2d 67. The legislature has seen fit to vest the Public Service Commission with exclusive authority to allocate the territory in which a particular utility may render service, by providing that the Commission shall pass upon the question of the public necessity and convenience for any new or additional company to begin business anywhere in the state, or for an established company to enter new territory. State ex rel. City of Sikeston v. Public Service Commission of Missouri, 336 Mo. 985, 82 S.W.2d 105; Public Service Commission v. Kansas City Power & Light Co., 325 Mo. 1217, 31 S.W.2d 67; State ex rel. Harline v. Public Service Commission of Missouri, Mo.App., 343 S.W.2d 177. This delegation of authority to the Commission, as it applies specifically to telephone utilities, was effected by Section 392.-260 V.A.M.S. This section is contained in Chapter 392 V.A.M.S., which applies specially to telephone and telegraph companies, and provides in part as follows: "No * * * telephone corporation hereafter formed shall begin construction of its * * * telephone line without first having obtained the permission and approval of the commission and its certificate of public convenience and necessity, after a hearing had upon such notice as the commission may prescribe".

Section 392.260 V.A.M.S. has its counterpart in Section 393.170 V.A.M.S., contained in Chapter 393 of the Public Service Commission Law specially applicable to gas, electrical and water companies. Section 393.170 contains the following provisions: "1. No gas corporation, electrical corporation or water corporation shall begin construction of a gas plant, electric plant or water system without first having obtained the permission and approval of the commission. * * * 3. The commission shall have the power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service".

In Public Service Commission v. Kansas City Power & Light Co., 325 Mo. 1217, 31 S.W.2d 67, the Supreme Court construed present Section 393.170, in connection with other pertinent provisions of the Public Service Commission Law, and reached the following conclusions:

"A reasonable construction of the Public Service Commission Act forces the conclusion that it was the intention of the Legislature to clothe the commission with exclusive authority to determine whether or not the furnishing of electricity to a given town or community is a public necessity or necessary for public convenience, and, if so, to prescribe safe, efficient, and adequate property, equipment, and appliances in order to furnish adequate service at reasonable rates and at the same time safeguard the lives and property of the general public, those using the electricity and those engaged in the manufacture and distribution thereof.

"If, as appellant contends, an electrical corporation which has a certificate of convenience and necessity to operate its plant in a given town or community might extend its lines to and furnish other communities with electricity without a certificate or authority from the commission, the purpose of the statute would be defeated. Under such a construction of the statute the commission would have no opportunity to determine whether or not public convenience and necessity demanded the use of electricity in the community to which the line was extended, and no opportunity to prescribe the safe and efficient construction of said extension or determine

whether or not appellant was financially able to construct, equip, and operate such extension and furnish adequate service at reasonable rates in the new community, without crippling the service in the community where the commission had theretofore authorized it to operate".

■ The same reasoning and logic applied by the Supreme Court in its decision from which we have above quoted, relative to an electrical company under the purview of Section 393.170, applies with equal force to telephone companies under Section 392.-260. These two statutes are similar in provisions and purposes. Both clearly contemplate that any right of the nature here claimed can be obtained only by securing a certificate of convenience and necessity from the Commission, after proper notice and a hearing. Since there is no showing by Doniphan that it has complied with these requirements, it is necessarily our conclusion that it has no authority to extend its telephone lines into the three mile strip and render telephone service in that area. Hence, we further rule that Doniphan possesses no property right whatsoever in the three mile strip. In arriving at these conclusions we have duly considered the single authority Doniphan has submitted, to-wit, the following quoted excerpt from the report of the Commission in Re Louisville Community Farmers, 5 Mo., P.S.C.(N.S.) 82, 84: "The service area maps previously described were filed with the Commission and by operation of law became effective. As such they are binding upon the Commission, the applicants and the utilities unless the Commission finds them to be unreasonable and arbitrary". Nothing contained in the foregoing can be held to derogate the clear requirements of the Public Service Commission Law.

■ In ruling that Doniphan has no property right in the three mile strip, we have effectively disposed of Doniphan's principal assignments, which, stripped of constitutional aspects, are to the effect that the Commission's action unlawfully deprives Doniphan of its property and wrongfully takes or damages its private property for public use without just compensation. A nonexistent property right cannot be violated or subjected to eminent domain.

■ Doniphan additionally complains that the action taken by the Commission in this case during the pendency of its application to the Federal Communications Commission "could adversely affect the prospects of Doniphan Telephone Company in said proceedings". Even if it be assumed that the Commission's action *might* adversely affect Doniphan's chances of prevailing in the federal forum, we think that contingency has no relevance to this appeal. We find no merit in the assignment.

■ Doniphan's remaining contention is a charge that the action of the Commission in denying Doniphan's offer, made at the second hearing, to prove that it had "a proposal to make to the people in the Three Mile Strip which it deems to be better for the proposed customers than the provisions of the tariff itself" was unreasonable and improper and constitutes material and reversible error. This complaint was not contained in Doniphan's application for a rehearing as a ground on which it considered the Commission's action to be unlawful, unjust or unreasonable. It is provided by Section 386.500 V.A.M.S. that "Such application (to the Commission for a rehearing) shall set forth specifically the ground or grounds on which the applicant considers said order or decision to be unlawful, unjust, or unreasonable. No corporation or person or public utility shall in any court urge or rely on any ground not so set forth in said application". By force of this statute, we are precluded from considering the assignment. State ex rel. City of West Plains v. Public Service Commission, Mo.Sup., 310 S.W.2d 925.

■ From our review of the record required by Doniphan's appeal complaints, and particularly from the portions we have sum-

marized and set out in this opinion, we are convinced that the orders issued by the Commission are based on competent and substantial evidence and are, therefore, reasonable. Moreover, considering the comprehensive authority to regulate telephone companies and their services that has been vested in the Commission by Sections, No. 386.250, No. 386.320, No. 392.260, No. 392.-240, No. 392.250, No. 386.610, and No. 386.-040, V.A.M.S., it is also our opinion that the Commission has not acted in excess of its statutory powers. Consequently, we find that the Commission's orders in this case are lawful.

The judgment is affirmed.

All concur.