**STATE ex rel. SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Respondent,**

**State ex rel. Eastern Missouri Telephone Company, a Corporation, Respondent,**

**State ex rel. South Missouri Telephone Company, a Corporation, Respondent,**

**v.**

**PUBLIC SERVICE COMMISSION of the State of Missouri, Tyre W. Burton, E. L. McClintock, William Barton, Frank W. May, and Donal D. Guffey, as Members of said Public Service Commission, Appellant.**

Nos. 52577–52581.

Supreme Court of Missouri, En Banc.

May 31, 1967.

Motion for Rehearing Denied July 10, 1967.

John Mohler, St. Louis, for respondent, Southwestern Bell Telephone Co.

Hendren & Andrae, by John E. Burruss, Jr., Jefferson City, for respondent, South Missouri Telephone Co.

Wayne W. Waldo, General Counsel, H. Burks Davis, Jefferson City, for appellant.

FINCH, Judge.

These appeals all involve the propriety of an order of the Public Service Commission which directed Southwestern Bell Telephone Company (Bell) to provide telephone service to an area in Montgomery County, Missouri. In separate cases, the Commission denied requests by Eastern Missouri Telephone Company (Eastern) and by South Missouri Telephone Company (South Missouri) to provide telephone service for this same area for the reason that Bell was being directed to provide service. On certiorari to the Circuit Court of Cole County, these cases were consolidated for briefing and argument. The Circuit Court reversed the Commission, finding that it had no authority to require Bell to extend its services to the area in question and ordering the applications of Eastern and South Missouri returned to the Commission for further consideration.

The Commission appealed all of the cases to the Kansas City Court of Appeals. It transferred the cases to this court on the basis that the cost to Bell of installing the facilities called for would be $134,000 and hence the amount in dispute is in excess of $15,000. State ex rel. Southwestern Bell Telephone Co., et al. v. Public Service Commission of Missouri, Mo.App., 416 S.W.2d 669 (decided Oct. 3, 1966). This court does have jurisdiction. State ex rel. City of Neosho v. Public Service Commission, Mo., 367 S.W.2d 589; ; State ex rel. Public Water Supply Dist. No. 2 of Jackson County v. Burton et al., Mo., 379 S.W.2d 593. The five appeals may be decided by one opinion.

What the parties and the Commission refer to as the "disputed area" lies in the eastern part of Montgomery County. The twin communities of Bellflower and Liege are located in the western half of that area. The area has been and presently is served by the Bellflower Mutual Telephone Company. Immediately to the west and south lies the territory of Bell's Montgomery City telephone exchange. To the north, telephone service is provided by Eastern, and to the south and east is located the area which South Missouri serves. Its nearest exchange is at Truxton.

Prior to the filing of any of the proceedings involved in these appeals, the Midwestern Telephone Company, predecessor

of South Missouri, sought to extend its Truxton exchange area westward to include territory being served by Bellflower Mutual. Bellflower Telephone Company, a corporation organized as a proposed successor to the Mutual Company, then sought a certificate of convenience and necessity to authorize it to serve the Bellflower Mutual area, including the territory Midwestern sought to annex to its Truxton exchange. The two cases were heard jointly by the Commission. It denied the petition of Bellflower, but granted Midwestern a certificate which covered an area described by the parties as constituting the east half of the "disputed area." Bellflower sought review of the Commission's order and both cases still are lodged in the Circuit Court of Cole County. Pending determination of those cases on review, South Missouri has not made any installations in the area involved in those proceedings.

After the Commission's hearing in the Bellflower-Midwestern cases, 152 residents of the "disputed area" filed petitions with the Commission requesting it to authorize Bell to provide telephone services within the area.[1] Bell did not request authority to serve the "disputed area," but filed an answer stating its opposition to extension of its services and its unwillingness to serve to the east beyond its Montgomery City exchange area boundaries. The 152 residents then amended their petitions and asked the Commission to require rather than merely authorize Bell to provide telephone services. Both Eastern and South Missouri intervened and opposed the petitions for service by Bell. In addition, each company filed a separate petition with the Commission asking a certificate of con-

venience and necessity to serve the "disputed area."

The Commission held separate hearings involving the application of the 152 citizens[2] for Bell service, the application of South Missouri, and the application of Eastern. Extensive testimony was taken in each of the three cases. Subsequently, by three to two decisions, the Commission directed Bell to provide telephone service in the entire "disputed area." Its order specified that "Bell shall hereinafter offer telephone service to the public in such area through its Montgomery City exchange and an exchange in the Bellflower-Liege area, if so established, and it is further ordered to offer extended area service to the public between the disputed area and the Montgomery City exchange and to obtain any necessary franchises and permission to use the State and County roads and City streets to carry out these orders as provided by law." The Commission found that all three companies were fully able to serve the "disputed area," but stated that the overwhelming sentiment among the public for Bell as first choice to serve the area left little for the Commission to do save to order Bell to accede to the wishes of the public. Residents of the northeastern part of the "disputed area" (the part for which South Missouri received a certificate of authority in the prior proceeding) were given an option of service by Bell or by South Missouri out of its Truxton exchange "so long as they live on the property where they now reside." If they elected South Missouri service, the latter was required to furnish the service, but when a subscriber in that area moved from his present property or died, the option would terminate and service thereafter would be by Bell.[3]

---

1. These 152 individuals also asked the Commission to postpone its decision in the Bellflower-Midwestern cases until their case could be heard and decided, but that motion was denied.

2. Additional petitions were filed at the hearing and the number of petitioners

was increased to 273. These included officers of Bellflower Mutual who testified that it would discontinue operations if Bell should be directed to serve the area.

3. South Missouri describes this as a "determinable life estate" for telephone service and says that is arbitrary and unrea-

The Circuit Court, in reversing Commission case No. 14655 (the Bell case), found that (1) the Commission had not made a finding of fact that Bell had ever offered, professed or undertaken to provide its telephone utility services to the "disputed area," (2) there was no competent and substantial evidence in the record to show that Bell had ever so offered, and (3) the Commission had no authority to require Bell, contrary to its wishes, to extend its services into an area which it had not offered, professed or undertaken to serve.[4]

The Circuit Court reversed the Commission in the cases involving Eastern (No. 15322) and South Missouri (No. 15279) and remanded them for further consideration by the Commission. The court stated that since the Commission denied those applications on the assumption that service would be provided for the area by Bell, the matter should be considered further in the light of the judgment holding Bell could not be required to furnish such service.

■ At the outset, we point out that "[i]n this review our province is to determine whether the commission's order is lawful and, if so, whether it is reasonable and based upon competent and substantial evidence upon the whole record." State ex rel. Hotel Continental v. Burton et al., Mo., 334 S.W.2d 75, 78.

■ We hold that the Commission is without power to order a telephone company to provide services in an area which it has not offered, professed or undertaken to serve. What this court said in State ex rel. Ozark Power & Water Co. v. Public Service Commission of Missouri et al., 287

Mo. 522, 229 S.W. 782, 784, is applicable: "If it be true, as relator contends, that Diamond is not a part of the territory it has undertaken to serve, then unquestionably the Commission was without power to make the order under consideration. The Public Service Commission Law (subdivision 2, § 10478, R.S.1919) confers upon the Commission 'power to order reasonable improvements and extensions of the works, wires, poles, pipes, lines, conduits, ducts and other reasonable devices, apparatus and property of * * * electrical corporations. * *' This power, however, must be deemed to be one within constitutional limitations. So construed, it does not give the Commission authority to compel relator to serve a territory not embraced within its profession of service. Such compulsion would be tantamount to an appropriation of relator's property to a public service to which it has not dedicated it—a taking of private property for public use without just compensation. Atchison, T. & S. F. Ry. Co. v. Railroad Comm. [of California], 173 Cal. 577, 160 Pac. 828, 2 A.L.R. 975. For notwithstanding relator is employing its plant and equipment in a public service, they still remain its private property, and the public may not assume the role of general manager and require such property to be used in a service to which the owner has not voluntarily dedicated it. Interstate Commerce Com. v. [Chicago Great Western] Railroad, 209 U.S. 108, 28 Sup.Ct. 493, 52 L.Ed. 705."[5]

The case of State ex rel. Doniphan Telephone Co. v. Public Service Commission, Mo.App., 377 S.W.2d 469, is cited by the Commission as authority for its order for service by Bell. In the Doniphan case the Commission ordered Southwestern Bell

sonable. In view of the result we reach, we need not consider this contention or the argument that ruinous competition was required by certificating two companies in part of the area in question.

4. There are five cases here because Bell, South Missouri, and Eastern all took separate appeals in the Bell case and South Missouri and Eastern each appealed its own case.

5. The dissenting opinions of Commissioners McClintock and Guffey of the Public Service Commission relied on the Ozark Power & Water Company case as authority that the Commission could not order service in the area by Bell.

Telephone Company to provide service to an area known as the "Three Mile Strip" in the southern part of Madison County. The case originated upon petition of residents of the area asking that they be afforded telephone service by Bell. The proceedings were opposed by Bell as well as by Doniphan Telephone Company. The Commission ordered Bell to provide service. The issue of the validity of that order, however, was not involved in the case on appeal because Bell did not seek a review of the Commission's order. Only Doniphan Telephone Company appealed from the Circuit Court's judgment of affirmance, and hence the case on appeal involved solely the rights of Doniphan Telephone Company to serve the area. Neither the decision by the Kansas City Court of Appeals nor the decision of this court which transferred the case to the Court of Appeals on jurisdictional grounds [6] is authority for the validity of the order of the Commission herein.

The Commission argues that it has the power to order a telephone company to provide service to a particular area solely on the basis that the public interest so requires, even where the company has not professed to offer service to that territory. Its brief states: "Telephone companies are permitted to make voluntary extensions of their lines only with the consent of the Commission, lest waste may otherwise ensue. On the other hand, they are made subject to a correlative duty if so ordered by the Commission to make improvements, additions and extensions, even though unwillingly, when telephone service is otherwise inadequate." For us to so hold would be to require a company, merely because it operates a utility under state supervision and pursuant to state authority at one location, to dedicate a portion of its property to the operation of a similar utility elsewhere, even though it had not so requested or offered, and even though this operation was contrary to its wishes. As said in the

Ozark Power & Water case, supra, 229 S.W. 1. c. 785, this would be "an appropriation of relator's property to a public service to which it has not dedicated it—a taking of private property for public use without just compensation." This would violate both the Fourteenth Amendment to the Constitution of the United States and § 10, Article I of the Constitution of Missouri, 1945, V.A. M.S.

The fact that 273 of a potential of 275 or so customers in the "disputed area" expressed a strong preference for Bell service and an unwillingness to accept another company, no matter how good, cannot and does not serve as a basis for authority of the Commission to order service where the company has not professed to serve and is unwilling to serve. The desires of the people can be of importance as between rival companies seeking authority to serve, or in determining whether to order an extension of service in an area which a company has professed to serve, but the Commission does not have the power to order a company to enter a new area and provide service therein on the basis of popular desire.

The Commission does have power to order a telephone company to make reasonable improvements in its facilities or to extend its lines so as to provide service or better service in an area which the company has undertaken or professed to serve. That question was settled in the Ozark Power & Water case, supra, 1. c. 785, by the language: "On the other hand, if Diamond is territory comprehended within relator's profession of service, relator may be required to serve it, because it is relator's duty, within reasonable limitations, to serve all in such territory who apply."

We come, therefore, to the question of whether Bell has professed to serve the "disputed area." The Circuit Court in its findings and judgment observed

6. State ex rel. Doniphan Telephone Company v. Public Service Commission, Mo., 369 S.W.2d 572.

that the Commission made no finding of fact that Bell had ever offered, professed or undertaken to provide its telephone services in the "disputed area." It further found that there was no competent and substantial evidence in the record to support such a finding if one had been made. We agree. The Commission stresses the fact that Bell has provided service within the territory designated in the area map for the Montgomery City exchange on file with the Commission, and that it includes rural territory which adjoins rural portions of the "disputed area." It also includes Price's Branch, a small community immediately adjacent to the disputed area on the south, and the community of Buell, which is north and east of Montgomery City and also near the boundary of the "disputed area." A community of interest exists between people in the "disputed area" and Montgomery City, as the witnesses testified and the Commission found. These facts, however, do not mean that Bell has offered to serve other than the territory shown on its Montgomery City exchange area map. If we were to adopt a philosophy that territory which immediately adjoins an exchange area is to be considered a part thereof and hence within the proffered service area, there could be repeated extensions of the area of service on the basis of proximity and community of interest. Such a holding would result in ascribing to a company an intention to offer service to an area in which the company in fact did not offer service. We reject that concept.

█ The next contention by the Commission is that Bell has made a profession of service by furnishing long distance service to the "disputed area." In the first place, this would not amount to a profession of local telephone service. Furthermore, Bell simply provides to Bellflower Mutual a connection with Bell's toll system to permit it to provide long distance service to its customers. Persons using long distance are customers of Bellflower Mutual, not Bell. This is not a basis for holding that Bell

has professed to furnish telephone services to the "disputed area."

Finally, the Commission argues that Bell operates under "grandfather rights" conferred by the Public Service Commission Act of 1913 and that as a result it necessarily professes to serve all of the State of Missouri. This conclusion does not follow. The pertinent section in the 1913 Act (now § 392.260, R.S.Mo. 1959, V.A.M.S.) is as follows: "No telegraph corporation or telephone corporation hereafter formed shall begin construction of its telegraph line or telephone line without first having obtained the permission and approval of the commission and its certificate of public convenience and necessity, after a hearing had upon such notice as the commission may prescribe. * * *"

█ The above section requires that telephone corporations formed after the date of the Act secure permission and approval from the Commission and its certificate of public convenience and necessity prior to constructing telephone lines. It does not impose such an obligation on telephone companies organized prior to that date. Whether, as the Commission asserts, Bell may serve any area in Missouri not then being served by it without seeking authority from the Commission is not before us for decision. Even asuming such "grandfather rights" to profess to serve the entire state, the question we must determine is whether Bell, in fact, has professed to provide service to the area. A mere right to so profess is not enough. In the Ozark Power & Water case, supra, the relator utility company had been organized in 1911, prior to the enactment of the Public Service Commission Act. Its corporate charter from the State of Missouri empowered it "to generate, distribute and sell electric energy in Missouri and elsewhere, and to do all things incident thereto." The court, 1. c. 785, said: "The charter in this respect is permissive merely. It does not require relator, upon demand, to distribute and sell electricity everywhere in Missouri; nor

can it be reasonably inferred that by accepting such charter power it undertook to furnish service in all parts of the state." That language is applicable here. The mere fact, if it be a fact, that Bell's charter authorized it to serve anywhere in Missouri did not thereby impose a duty to furnish services everywhere in the state, nor constitute a profession of service for every part of the state. The fact that subsequently, when the Public Service Commission Act was enacted, the legislature exempted existing telephone companies under what is now § 392.260 does not alter the situation. The "grandfather rights" represented a concession by the state, not the imposition of an obligation. The issue here, as it was in the Ozark Power & Water case, is whether the company in fact has professed or offered to provide telephone service to the area in question. We have ruled previously that the evidence in the record before us does not so establish.

The judgments of the Circuit Court in all of these cases are affirmed.

· All concur.