**STATE of Missouri, ex rel., MoKAN DIAL, INC., and Choctaw Telephone Company, Appellants,**

v.

**PUBLIC SERVICE COMMISSION OF MISSOURI, et al., Respondents.**

**No. WD 49492.**

Missouri Court of Appeals, Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied May 30, 1995.

Craig S. Johnson, Andereck, Evans, Milne, Peace & Baumhoer, Jefferson City, for appellants MoKan Dial, Inc. and Choctaw.

Alfred G. Richter, Jr., Katherine C. Swaller, Diana J. Harter, St. Louis, for intervenor/respondent, Southwestern Bell.

Thomas A. Grimaldi, Overland Park, Kan., for intervenor/respondent United Telephone Co. of Missouri.

Randy Bakewell, Asst. Public Counsel, Jefferson City, for respondent Office of Public Counsel.

Robert J. Hack, Jefferson City, for respondent, Missouri Public Service Com'n.

Before LOWENSTEIN, P.J., and SMART and ELLIS, JJ.

LOWENSTEIN, Presiding Judge.

Short as many abbreviations, acronyms and jargon as possible, this case involves the Public Service Commission's (Commission) effort to find a more equitable way of inter-telephone company compensation, where a phone customer makes or receives what is commonly termed a "toll call"—a call to a number in a different exchange, but in a relatively close geographical area. Prior to this effort, larger telecommunications companies such as Southwestern Bell, United Telephone and GTE, would connect the "toll calls," and then would settle up with the smaller company, according to the local exchange on the toll received. The Commission set up areas where, for a flat rate, telephone users could make unlimited calls which would have been toll calls. Under the new plan, recompense would be made to the local company in an amount equal to the lost revenues from toll calls. Of the forty local exchanges affected by this new order, only two have appealed.

MoKan Dial, Inc. (MoKan) serves the single exchange of Freeman, outside Harrisonville, south of Kansas City. The other appellant, Choctaw Telephone Company (Choctaw) serves the single exchange of Halltown, just west of Springfield. Both are defined as a local exchange company under Section 386.020(22), RSMo 1994. (All statutory references will be to these 1994 Revised Statutes). In December 1992, the Commission, after hearings, ordered a change in the existing system of handling and charging toll calls. Commission felt telephone customers were unhappy about high charges for calls to a neighboring area, particularly to a nearby city, and that the method of recompense for the larger companies handling the inter-exchange calls (within an area code) was unfair. Commission created the Metropolitan Calling Areas of service, eliminated toll charges to customers, and based charges on a monthly rate. This interexchange service is defined in § 386.020(20). § 392.240.1 is applicable here and invests the Commission with authority to revise and to set reasonable rates for tolls and other services when customer needs are not being met and service is inadequate. Commission's order called for any loss in toll revenues to smaller companies be recaptured by their ability to share in the new flat rates, and to receive payments from larger companies which had handled the toll calls. This new service did not cause any smaller local exchange to suffer any loss in revenue, nor the necessity to invest in any facilities outside their certificated territory.

■ The circuit court affirmed the Commission's order. Review here is to determine if the Commission's action was lawful and, if so, whether it was reasonable based on competent and substantial evidence in the record. *State ex. rel. Utility Consumers Council, Inc. v. Public Service Com'n*, 585 S.W.2d 41 (Mo. banc 1979).

■ Appellants raise five separate points of attack on the Commission's order: 1) the Commission's classification of the new service as a local service; 2) the order usurps their management authority; 3) the order causes them to provide service outside their existing area; 4) the Commission didn't properly set the new rates; and 5) the end result would be a taking under due process because of the effect on Appellants' rate of return. None of the points have merit, and will be dealt with together.

The statutes, the record, and the case law put at rest all arguments raised here. Prior to the order in question, consumers were unhappy with toll rates, usage was dropping, and the larger companies were losing money in handling calls to neighboring exchanges. The plan, adopted after extensive hearings, should be welcomed by telephone users in Appellants' service areas and, even with the underwriting of revenues to Appellants by the larger companies, would still be less expensive to the larger providers. Most importantly, Appellants would not have to make any capital outlays and would not, against their will, expand their area of service. Fur-

**56**

ther, Appellants would suffer no loss of present income.

*State ex rel. Southwestern Bell Tel. Co. v. Public Service Com'n,* 416 S.W.2d 109 (Mo. banc 1967), cited by Appellants, is clearly distinguishable from this case. *State ex rel. Springfield v. Public Service Com'n,* 812 S.W.2d 827, 832 (Mo.App.1991). *Southwestern Bell* concerned a factual situation where Bell was fighting a Commission order forcing it to extend its lines to provide service in an area it had not undertaken or professed to serve. 416 S.W.2d at 114. Our state Supreme Court held the Commission could not force a telecommunications company to unwillingly expand its area. *Id.* at 114–16. "In the case at bar, the Commission is exercising its authority to regulate the activities of appellants within their respective service areas." *Springfield,* 812 S.W.2d at 832.

The Commission had the legal authority to set up this plan. The only other consideration is whether the action and the resultant rates were reasonable. *State ex. rel. Utility Consumers Council, Inc. v. Public Service Com'n,* 585 S.W.2d 41, 49 (Mo. banc 1979). Appellants were already a part of an interexchange service—and will continue to be after the plan; without further expense and making the same amount of revenue. This court fails to see how Appellants' management functions have been damaged, or how they have suffered any harm allowing them relief.

The judgment is affirmed.

All concur.