STATE EX REL. DELMAR DAIL, STATE LEGISLATIVE REPRESENTATIVE OF THE BROTHERHOOD OF RAILROAD TRAINMEN, APPELLANT, v. THE PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, AND MORRIS OSBURN, KYLE WILLIAMS, CHARLES HENSON, AGNES MAE WILSON AND E. L. MCCLINTOCK, COMMISSIONERS, RESPONDENTS.— 203 S. W. 2d 491.

Kansas City Court of Appeals. Opinion delivered June 2, 1947.

*Frank Mattes,* for appellant.

252

*John P. Randolph,* General Counsel, *Wilbur F. Hall,* Assistant Counsel, *J L. Parks,* Assistant Counsel, for respondents.

*Sam D. Parker, Lester G. Seacat,* for Kansas City Terminal Railway Company.

BOYER, C.—For brevity the appellant will be referred to as the Brotherhood, and the respondents as the Commission. This is an appeal by the Brotherhood from a judgment of the circuit court of Cole County affirming, upon review, an order of the Commission granting an application of the Kansas City Terminal Railway Company for authority to maintain and operate a certain canopy which had been erected over appliances used for the handling of United States mail. The canopy was constructed between tracks 28 and 29 with less clearance than that prescribed by General Order No. 24 of the Commission, and without previous authority of the Commission authorizing the construction. Prior to the application of the Company, the Brotherhood had filed complaint on account of the alleged lack of proper clearance of the structure made by the Company between said tracks.

The application recites the corporate character of the Terminal Company, the nature of its business as the operation of railroad lines and railroad facilities in Kansas City, including a union passenger station and other terminal facilities, and providing facilities upon its premises in Kansas City for handling United States Mail, both by itself and by all of the railroads running into Kansas City for the purpose of transferring mail from incoming trains to the Kansas City Post Office or to outgoing trains; that prior to September 1944, the Postmaster General of the United States requested and demanded that the Terminal

Company furnish additional and more adequate mail handling facilities in and about the Union Station; that thereafter the mail committee, composed of representatives of railroads operating into the Kansas City Union Station and using the mail handling facilities of the Terminal Company, investigated said mail handling facilities and made recommendations for the improvement thereof, including the construction of an unloading dock and belt conveyor to be located between tracks 28 and 29 at the Kansas City Union Station; that pursuant to said recommendations, said loading dock and belt conveyor system were constructed and are about 336 feet in length; that the construction work was commenced about September 1944, and completed about December 26, 1944.

It was further alleged that the regulations for the handling of mail promulgated by the Postmaster General require the protection of the mail so far as possible from the elements; and in order to comply with said regulations and to protect the belt conveyor system and the mail, it was necessary to erect a canopy over the belt conveyor system between said tracks 28 and 29, and the application states that inadvertently and without intention to disregard or violate any law or any order or regulation of the Commission, the Company constructed said canopy with less clearance with reference to said tracks than the clearance prescribed by General Order No. 24 of the Commission. It is further alleged that the use of the standard clearance provided by General Order No. 24 is not only impracticable but is impossible because of the necessity for protecting the belt conveyor and the machinery in connection therewith from the elements, and the necessity of complying with the requirements of the Postmaster General with reference to the protection of the mail from the elements, and that a canopy which would comply with the clearance prescribed by said General Order No. 24 would afford no protection from the elements for either the mail or the machinery in said conveyor system; that at all places where employees are required to work all clearances comply with said General Order No. 24; that there is no occasion for trainmen being on the sides or tops of cars operated on these tracks; that they are not main line tracks but are used solely and exclusively for unloading passenger and mail trains; that the majority of cars are set to the platform by switch engines for the purpose of unloading the mail; that the maximum speed for incoming trains is eight miles an hour, and the maximum speed for switching is one to four miles an hour; that bulletins were issued to all employees of the Terminal Company and to all railroads using said loading platform with reference to precautions for the safety of trainmen, and said bulletins were attached to the petition as an exhibit. Other exhibits were also attached showing the extent and character of the mail dock and canopy as well as the entire layout of the Kansas City Union Station tracks. It is alleged that minimum clearance provided by General

254

Order No. 24 was fully provided with reference to the platform for its entire length, and that minimum clearance was fully afforded for said canopy for its entire length to a point thirteen feet and five inches above the top of the rail.

After due notice and at the time of the hearing of the application the Brotherhood appeared as protestant, at which time counsel for the Brotherhood, before the introduction of any evidence, raised the question of the jurisdiction of the Commission on the ground that the application showed that the structure was made without authority of the Commission, that it was illegally built in violation of General Order No. 24 of the Commission, and that the Commission had no authority to authorize maintenance of a building which was illegally constructed. It was admitted, however, by counsel in making his statement that the law is well settled that the Commission has authority to authorize construction of buildings with less than standard clearance provided it is found to be impracticable to build them with such clearance.

Counsel for the applicant, in response to the suggestion of lack of jurisdiction of the Commission to hear such an application, stated that the applicant relied upon previous rulings of the Commission to the effect that the Commission had power to condone innocent and inadvertent violations of its rules, and that it would grant applications to maintain structures with sub-standard clearance if the facts were such that it would have granted the application in the first instance had it been duly filed prior to construction. The question of the jurisdiction of the Commission was taken with the case on the merits and was fully discussed in the Commission's report and order as will hereafter appear.

Evidence in support of the application consists in the main of the testimony of Mr. G. W. Beal, Jr., who was assistant chief engineer for the Terminal Company; Mr. H. D. Mack, Jr., manager of mail and express traffic for the Missouri Pacific Railroad Company, and Mr. Alexander Fulton, general yardmaster for the Terminal Company, together with the exhibits identified by them and offered in evidence. From their testimony it appears that prior to September 1944, there had been repeated complaints from the office of the Postmaster General, and from the Superintendent of Railway Mail Service located at St. Louis, calling attention to an unusual congestion of mail which had occurred previously at Kansas City, and demanding that vigorous steps be taken to avoid a recurrence of such congestion; that the conditions were intolerable and that positive remedial action was necessary to correct the situation. In a communication from the Second Assistant Postmaster General there was an intimation of severe fines and penalties that might be inflicted under the postal laws and regulations if the facilities and methods of handling mail at Kansas City were not improved. In response to these complaints which were

brought to the knowledge of the President of the Terminal Company, and to Mr. J. M. Kurn, trustee of the St. Louis-San Francisco Railroad Company and executive officer of one of the lines using the Terminal facilities, various conferences were had between a committee representing the tenant lines at Kansas City and persons representing the Post Office Department and the Superintendent of Railway Mail Service to devise plans, ways and means of facilitating the handling of United States mail at the Kansas City Union Station. As a result of their conferences an agreement was reached upon plans and specifications for the erection of a mail dock containing a conveyor belt between tracks 28 and 29.

Mr. Mack, as chairman of the committee representing the tenant lines, acted chiefly in behalf of all the railroads at Kansas City, including the Terminal, in an effort to reach satisfactory arrangements with the Post Office Department and the Superintendent of Railway Mail Service at St. Louis. He testified that the demand for improved facilities was a matter of expediting the handling of the mail which had grown in volume considerably during the war period, and that "we were told by the Post Office Department that unless we could do something to cure the situation, mails, transit mails of a transcontinental nature, would be diverted away from the St. Louis and Kansas City gateways to and through the Chicago gateway. So we felt compelled to do something about the problem." He further testified that the Post Office Department demanded a canopy over the dock, and that he was informed that the platform could not be operated without a canopy.

During the testimony of Mr. Beal certain postal regulations were read into the record providing for the imposition of fines for delinquencies on the part of carriers handling mail, and providing that the mail should not be exposed to inclement weather or kept in any place that exposed it to depreciation, loss or damage. Mr. Beal testified that the canopy in question received the approval of the Post Office Department. His testimony, together with the exhibits offered in connection therewith, furnished a full and complete description of all the Terminal facilities, the various tracks and train sheds, the spacing between tracks and the platform spaces for the use of passengers, baggage, and mail trucks and small tractors used for towing such vehicles. Outside the train sheds and as a part of the same system of tracks were located additional tracks numbered 28, 29, 30, and 31. The space between tracks 28 and 29 varies from 12.5 to 17.5 feet to take care of the dock and conveyor. Between tracks 27 and 28, an area varying in width from 31.5 to 36.5 feet, is an asphalt platform used for passengers. Twelve trunk lines are tenants of the Terminal Railway which handles a large volume of mail, aggregating sixty cars a day and much more during holiday seasons. By regulations of the Post Office Department the Terminal is allowed two hours

to unload a car of storage mail. It was shown by the testimony of this witness that in order to comply with the requirements of the order of the Commission in reference to vertical clearance, it would be necessary to raise the canopy over five feet, and that in so doing there would be no protection from the elements either for the mail or the dock. In explaining why the structure was built without prior approval of the Commission, he stated that due to the fact that trainmen were not required to work on the sides or tops of cars in handling the switching of trains at the place in question he inadvertently overlooked the fact that the canopy infringed on Order No. 24; that his chief concern was to satisfy the Post Office Department for the protection of the mail; and furthermore that "it was a very high pressure job. We had to get it done in order to satisfy the Post Office Department and avoid serious penalties, and we were in an awful hurry to get this thing completed; which, further, I might offer as an excuse that I overlooked the fact." He also stated that the fact of non-compliance with the Commission's order was first called to his attention upon the filing of the complaint by the Brotherhood.

It appears from the evidence that the appliances for the handling of the mail as herein described resulted in greatly improved conditions and satisfied the Post Office Department and the Superintendent of Railway Mail Service. The facilities were sufficient to accommodate the unloading of ten cars of mail at one time, and due to the extent of the dock and the manner of its construction it was no longer necessary to spot a car for unloading, but it could be unloaded at any place along the side of the dock.

Mr. Fulton testified that tracks 28 and 29 are not used by freight movements; that they are not what are usually designated open running tracks; that no train passes through without stopping; that the tracks are used principally by switching movements under the control of switching crews of the applicant with a speed limit of eight miles an hour, and said operations are usually at slower speed; that bulletins had been issued forbidding the routing of freight movements through tracks 28 and 29, and other bulletins were issued warning employees of the new construction and forbidding them to ride on the outside of cars next to the mail dock, and instructing them to work only on the platform side; that such bulletins were supplied to the agents of all tenant lines. The bulletins were offered in evidence and the yardmaster testified to compliance with said bulletins. The yardmaster had been in the employ of the Terminal for many years and was formerly a switchman himself. He testified that there was no reason for an employee to be on top of a car adjacent to the structure, and that illuminated warning signs were displayed at each end of the canopy informing employees of restricted clearance, and that switchmen had been instructed to ride only on the platform side of cars.

At the close of applicant's evidence counsel for the Brotherhood stated that he had two witnesses whose testimony he desired to introduce provided he would not be regarded as having waived his objection to the jurisdiction of the Commission by offering evidence. Upon being informed that his use of witnesses would not be regarded as a waiver of the jurisdictional question, counsel called Mr. Joseph Byrne, a switchman for the Terminal, who testified that he had been employed in numerous capacities and in practically every job on the Terminal Railroad; that he worked with switching crews as a helper or field man. He admitted the bulletin instructions to work on the platform side of a train at the dock which is a passenger unloading platform on the north side of track 28; that there is no platform next to track 29, but it is just a roadway. His testimony indicates a hazard to employees when required to work on the passenger unloading platform because of tractors hauling mail and express. He also testified that during switching movements it was necessary at times to get up on the mail dock; that he had been up there to spot cars for the mail department at their request; that in switching movements it was desirable for the switchman to be on the engineer's side of the train in order to convey signals directly to him, and if required at all times to be on the platform side of the train it would be necessary to communicate with the engineer through the fireman instead of directly.

Mr. C. C. Hammon testified that he was employed by the Terminal Company in the capacity of an engine foreman; that he had been employed by the Company since 1920, and had worked generally over the Terminal system; that he was conversant with the conditions surrounding the conveyor platform which had been constructed recently; that he represented the Brotherhood as general chairman. He stated that he was well acquainted with Mr. Ackerman who was chief engineer for the Terminal Company, and that during the construction of the platform he informed Mr. Ackerman that it would have to come out; that it did not comply with the law in his judgment; that he made no reply, but turned around and walked away; that the construction was better than half done at the time; that the canopy had not been completed but was just being started. His testimony was further directed to the fact that a large number of employees were new and inexperienced at the work and did not have an adequate training period to become familiarized with all the bulletins issued by the Company, and as a consequence were not informed as to the hazards which were claimed to be incident to the situation.

At the conclusion of the evidence the parties were granted time to present briefs. Upon consideration of these briefs, together with all the evidence in the case, the Commission issued its report and order. In the report the Commission dealt separately with the question of its jurisdiction which had been raised by the protestant and then gave an extensive review of the evidence in reference to the merits of the

case, and concluded that the Commission had jurisdiction to entertain the proceeding, and that the evidence justified the approval of the application and that the Company should be authorized to maintain and operate the structure in question. An order was issued to that effect and was approved by the circuit court upon review, from which the Brotherhood duly appealed to this court.

Technically, the brief of appellant does not comply with Rule 1.08 which provides what the brief shall contain. There is no statement of the jurisdictional grounds of this court to entertain the appeal, and there is no statement of the evidence relative to the merits of the case, and no citation to the pages of the transcript containing such evidence. The points and authorities set forth in the brief are in the main nothing but abstract statements of law and there are no specific allegations of error. However, respondents in their statement show the jurisdictional grounds for this court to entertain the appeal. No objection is made to the form or contents of appellant's brief, but on the other hand they recognize that the question of the jurisdiction of the Commission is raised in this appeal and that it is the sole question. It appears from the briefs of both parties that they recognize that appellant has raised the question that the order of the Commission is void because it was not authorized by law, and that the Commission acted in excess of its statutory authority or jurisdiction.

In view of this attitude of the parties, and in view of Art. V, Sec. 22, of the Constitution of 1945, and also in view of our new Administrative Review Act passed by the Legislature in 1945 and designated S. C. S. S. B. 196, Mo. R. S. A. Sec. 1140.101, et seq., prescribing the permissible extent of the review of the proceedings of an administrative agency, we are of opinion that in the interest of justice and in the public interest this court should determine the question of the jurisdiction of the Commission to entertain the proceeding and the validity of the order made, notwithstanding the defects in appellant's brief.

Relative to the question in hand, appellant sets forth in points 1, 2, and 3 of its brief the proposition that the Commission is a body of limited jurisdiction and as such is vested with only such powers as are conferred upon it by the Public Service Commission Law by which it was created. There is no controversy over such a proposition and counsel for the Commission concede as much.

Appellant cites Sections 5129 to 5131 inclusive, R. S. Mo. 1939, which it designates as the Uniform Clearance Law, and presents the contention that this law is the only source of the Commission's powers relative to the approval of non-standard clearances; that these sections of the statute render inoperative the general powers of the Commission relative to clearances, and that they do not invest the Commission with jurisdiction to authorize the maintenance of a less than standard clearance structure which was erected without previous

authority. The argument is to the effect that the so-called Uniform Clearance Law was adopted subsequent to the passage of the Public Service Commission Law and engrafted upon it by reference legislation. But by virtue of being a subsequent act it became the sole repository of the power of the Commission, and that inasmuch as these sections of the statute do not confer jurisdiction upon the Commission to authorize the maintenance of a non-standard clearance structure erected without authority, the Commission had no such power and could not have recourse to its general powers under the Public Service Commission Law  Appellant cites State ex rel. City of Springfield v. Smith, 125 S. W. (2d) 883, 885. It does not support the contention made here. On page 885 of the opinion is the following statement: "It is familiar doctrine that when there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy, but to the extent of any necessary repugnancy between them, the special will prevail over the general statute." If the clearance statutes were engrafted upon the Public Service Commission Law, as appellant says they were by reference legislation, then it could not have been the legislative intent to create a special statute such as appellant claims for the clearance law. There is not anything in the clearance law that would necessarily render it repugnant to the powers of the Commission prescribed in the general act creating the Commission. Furthermore, the position of appellant's counsel here is inconsistent with the theory of appellant's counsel at the hearing of the case before the Commission when he proposed to offer evidence relative to the alleged safety of operations surrounding the entire structure of the dock and canopy. He then stated that the statute was broad enough to give the Commission power not only over specified clearances, but any unsafe condition that might arise. This was at least a concession of the general powers of the Commission to regulate all appliances in the interest of safety of employees and the public as provided in Sections 5619, 5626, and 5695, R. S. Mo. 1939. The contention of appellant that the clearance statutes are the only source of power for the Commission's action upon the pending application, and that they render inoperative all general powers of the Commission is untenable and cannot be sustained but must be denied.

The rule-making power of the Commission is not questioned. The power to make rules includes the power to alter them, and to determine any reasonable policy of interpretation and application of said rules. By the terms of the new Administrative Review Act heretofore referred to a rule is defined as including every regulation, standard, or statement of policy or interpretation of general application and

future effect, including the amendment or repeal thereof, adopted by any agency.

In the report and order of the Commission upon consideration of the question of its jurisdiction, and in answer to the position of the protestant that the Commission was without jurisdiction to entertain the proceeding, is an extended statement of the policy of the Commission to the effect that the Commission had uniformly exercised jurisdiction to hear and determine applications of this character, some of which had been granted and others denied; and that such applications for the maintenance and operation of structures previously erected without permission were sustained if the evidence showed that the structure would have been permitted if a timely application had been made, and if the violation of the clearance rule was innocent and inadvertent. The Commission reasons thus: "If we have no jurisdiction to hear such an application as this and the structure is one which would have merited our approval had it been timely applied for, then the net result would be to demolish the structure, and let the applicant apply for authorization to rebuild it and upon obtaining the authority from us, to then re-erect the structure, at repeated cost." The Commission found the facts to be that the canopy was constructed with less than the clearance required by its General Order No. 24 and without an order therefor, but inadvertently and without any intention to disregard or to violate the law or said order, and that upon the evidence in this case it was the conclusion of the Commission that if said evidence had been adduced upon a timely application for the construction of the structure the authority therefor would have been granted. The report and order then reviews a number of cases previously before the Commission in which the Commission had granted authority to maintain structures which had been built before obtaining authority of the Commission and in which the previously announced policy of the Commission was applied. Special reference is made to case No. 10171, Day-Brite Lighting, Inc., in which the policy of the Commission was announced in these words:

"Since the application is one to *maintain* rather than construct, counsel for the Brotherhood of Railroad Trainmen took the position that, under the law, the Commission has no jurisdiction to authorize the *maintenance* of a non- clearance structure which is completed, although he conceded that the Commission does have the right to authorize the original construction of nonclearance buildings. With respect to this point, the Commission is now of the opinion that it has power to condone innocent and inadvertent violation of its rules. Each case of this character will be determined on its merits and absent intentional breaches of our regulations, we shall, if we deem it proper, grant applications to maintain structures with sub-standard clearances, if the

facts are such that we would have granted the application in the first instance, had it been duly filed prior to construction. (Re Chicago, Burlington & Quincy R. R. Co., 24 Mo. PSC 706)."

There is also a review of a number of cases in which the applications were denied, and special reference is made to the case of State ex rel. Railroad Company v. Public Service Commission, 339 Mo. 641, 98 S. W. (2d) 699. In that case the Railroad Company had constructed a bridge in violation of the clearance statute and then applied to the Commission for an order authorizing the maintenance of it. The Commission denied the application because the evidence showed that if the application had been made for authority to erect the bridge no showing could have been made which would have justified an order authorizing the construction of the bridge with insufficient clearance. Upon review of that case the Supreme Court ruled that the order of the Commission was neither unreasonable nor unlawful. The effect of the decision was that the Commission had authority to entertain the proceeding, hear the application and determine that the showing was insufficient to justify the entering of an order authorizing the maintenance of the bridge. The question of jurisdiction of the Commission in such a proceeding was not specifically presented or decided, but inferentially at least the court held that the Commission had jurisdiction to entertain such a proceeding as the one which we are now considering. If the Commission had power to deny such an application, it seems it would also have power to grant a similar application if the facts on the merits of the case would warrant it.

In the pending case, the Commission ruled that it had jurisdiction of the proceeding and then reviewed the evidence for the purpose of determining the case upon the merits. The findings of fact made by the Commission from the evidence were to the effect that the unloading dock and the canopy were constructed to meet the requirements of the Post Office Department; that the canopy was necessary for the protection of the machinery in the mail unloading dock and for the protection of mail, and that a canopy which would comply with the general order of the Commission would be useless, and that it would be impracticable to require a canopy that would comply with the clearance provisions of General Order No. 24, and if such a canopy were erected it would be useless for the purpose intended. The Commission further found that no unusual hazard resulted from the canopy as it had been constructed. Upon the whole record the Commission found and concluded that it should authorize the maintenance and operation of the construction theretofore made, and it was so ordered.

The question for determination here is whether that order was either unreasonable or unlawful. In a review of this character that question is to be determined upon the whole record as in a suit in

equity. Sec. 5690, R. S. Mo. 1939. The regulations and practices prescribed by the Commission are prima facie lawful and reasonable. Sec. 5702, R. S. Mo. 1939. In an appeal of this character growing out of the exercise of the authority and powers of the Commission the burden is upon the party seeking to set aside the order of the Commission to show by clear and satisfactory evidence that the order is unreasonable or unlawful. Sec. 5703, R. S. Mo. 1939.

The new Administrative Review Act, heretofore cited and referred to, must also be taken into account in the manner and to the extent to which its provisions apply to the case in hand, all as set forth in Seabaugh's Dependents v. Garver Lumber Mfg. Co., 200 S. W. (2d) 55, 62. Under the interpretation and ruling in that case the order made by the Commission, for the purposes of review, is regarded as similar to a judgment in a non-jury law case. It is pointed out that the reviewing court could not substitute its own judgment on the evidence for that of the administrative tribunal, but that the court is authorized to decide whether the tribunal could have reasonably made its findings and reached its result upon consideration of all the evidence, and to set aside the decision of the agency if found to be contrary to the overwhelming weight of the evidence. Therefore, the findings of fact made by the Commission are no longer conclusive upon the reviewing court. Upon the record of the evidence in this case we conclude that there was no finding of fact made by the Commission contrary to the preponderance of the evidence, but that all of such findings were authorized and supported by the greater weight of the evidence in the case.

Under the rule-making power of the Commission and in accordance with the new Administrative Review Act, we hold and rule that the Commission was vested with the power of exercising discretion in the adoption of rules and regulations and in the declaration of its policies in reference to the interpretation and application of said rules in the future. By the express terms of said Act, a reviewing court shall not substitute its discretion for discretion legally vested in the agency.

Prior to the institution of this proceeding the Commission had repeatedly stated its declaration of policy and the interpretation and application of its clearance rule which would be made in a case of this character. The Brotherhood was a party to one of the proceedings in which such declaration was made and has long been aware of the declared policy of the Commission. The policy of the Commission so declared was not contrary to the exercise of a sound and reasonable discretion. The equities of this case were all with the applicant. We think it would have been unreasonable and oppressive for the Commission to deny the application and require the destruction and removal of the facilities for the handling of mail which were installed by the Company under pressure from governmental author-

ities. Under the circumstances in this case the Commission was justified in its finding of excusable neglect on the part of the Company in its failure to apply for and obtain permission before the installations were made. We think the Commission had the power to make the order which it would have made upon timely application.

Our conclusions, therefore, are that the Commission had jurisdiction to entertain the proceeding before it and to make such order as would be justified by the evidence. The findings made by the Commission were supported by a preponderance of the evidence. The order made by the Commission in this case was neither unreasonable nor unlawful and we so rule. The judgment of the circuit court should be affirmed. The Commissioner so recommends.

*Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.