Kenneth MARTIN, Plaintiff-Appellant,

v.

William SCHMALZ, et al.

No. 50029.

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 1986.

Robert Herman, Schwartz, McCoy, Herman & Davidson, St. Louis, for plaintiff-appellant.

Thomas W. Wehrle, County Counselor, Leslie Shechter, Asst. County Counselor, Robert E. Britt, Sp. Asst. St. Louis County Counselor, Clayton, for respondents.

CARL R. GAERTNER, Presiding Judge.

Kenneth Martin appeals the denial of his application to the St. Louis County Police Department for a private watchman's license. His application was referred to the St. Louis County Private Security Advisory Committee (PSAC), an agency established by the St. Louis County Board of Police Commissioners, which denied the license because of a false answer to a question on the application:

16. Were you ever arrested, detained or taken into custody in this state, in any other state, in military service or were you ever investigated by the police? Yes _____ No _____. If yes, how many times? _____ Any omissions will be considered as a basis for possible denial of your application for licensing.

Appellant answered this question in the negative. Actually, he had been arrested in 1967 and charged with unlawful possession of a concealed firearm; in 1970 he was arrested and charged with improper backing and no license; and in 1971 he was arrested and charged with general peace disturbance and resisting an officer. PSAC denied his license application for the reason that falsification showed poor character. On appeal to the Circuit Court of St. Louis County this denial was affirmed.

Four provisions of the arrest records statutes are pertinent.

610.100 Arrest records, closed, when—expunged, when.—If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records except as provided in section 610.120.

610.105. Effect of nolle pros—dismissal—sentence suspended on record.—If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records when such case is finally terminated except as provided in section 610.-120.

610.110. Failure to recite closed record excused—exceptions.—No person as to whom such records have become closed records shall thereafter, under any provision of law, be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial in response to any inquiry made of him for any purpose, except as provided in section 491.050, RSMo., and section 610.120.

610.120. Records to be confidential—accessible to whom, purposes.—Records required to be closed shall not be destroyed; they shall be inaccessible to the general public and to all persons other than the defendant except as provided in this section. They shall be available only to courts, administrative agencies, law enforcement agencies, and federal agencies for purposes of prosecution, litigation, sentencing, and parole consideration and to federal agencies for such investigative purposes as authorized by law or presidential executive order. All records which are closed records shall be removed from the records of the courts, administrative agencies, and law enforcement agencies which are available to the public and shall be kept in separate records which are to be held confidential and, where possible, pages of the public record shall be retyped or rewritten omitting those portions of the record which deal with the defendant's case. If retyping or rewriting is not feasible because of the permanent nature of the record books, such record entries shall be blacked out and recopied in a confidential book.

■■■ Appellant and respondents have joined issue on whether Missouri Arrests Records statutes should be applied prospectively or retrospectively. Article I, section 13 of the 1945 Missouri Constitution prohibits the enactment of any law "retrospective in its operation." Retrospective or retroactive laws are generally defined "as those which 'take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already passed.' " *State ex rel. St. Louis-San Francisco Railway Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974) (quoting *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958)). A statute "is said to be retroactive 'only when it is applied to rights acquired prior to its enactment.' " *Barbieri,* 315 S.W.2d at 714 (*quoting* 82 C.J.S. *Statutes* sec. 412 (1953)). A statute which does not take away or impair vested rights is not retrospective merely because it relates to prior facts or transactions. 315 S.W.2d at 714. Where a statute is procedural only and does not affect any existing substantive right, it does not fall within the ban against retro-

spective laws. *Danaher v. Smith*, 666 S.W.2d 452, 455 (Mo.App.1984).

The question narrows down to the existence, prior to the enactment of the arrest record statutes, of a vested right to disclosure of groundless arrests or unsubstantiated charges. We find no such right.

The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense. When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated.

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 241, 77 S.Ct. 752, 757, 1 L.Ed.2d 796 (1957) (footnote omitted). "[A] collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C.Cir.1975) (*quoting United States v. Dooley*, 364 F.Supp. 75, 77 (E.D.Pa.1973)).

Section 610.100, et seq. is a legislative recognition of the irrelevance of unprosecuted arrests except in very limited circumstances. Beyond the uses set forth in sec. 610.120, i.e., prosecution, litigation, sentencing and parole purposes by courts, law enforcement and administrative agencies, the records are closed to all but the individual arrested. While courts have recognized the lack of probative value of arrests and acquittals, it is well-documented that individuals can suffer greatly from the mere fact of an arrest. Among laypersons an arrestee is often considered a criminal, regardless of the disposition of his or her case. "An arrest record hangs like the sword of Damocles over one's life. The mistakenly arrested person never knows when it will cause a denial of credit, loss of a new job, or simply the loss of esteem,

trust, and respect from other members of the community." *Chase v. King*, 267 Pa. Super. 498, 406 A.2d 1388, 1391 (1979) (Hoffman, J., concurring and dissenting). Although we conclude that the arrest records statutes are not violative of the constitutional ban against retrospective laws and are purely procedural in that they relate to the manner of keeping records and the limitations upon the disclosure and use of the information contained therein, we are also cognizant of the observation in *State ex rel. St. Louis-San Francisco Railway Co. v. Buder*, 515 S.W.2d at 411:

It is best to keep in mind that the underlying repugnance to the retrospective application of laws is that an act or transaction, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto. Merely to label certain consequences as substantive and others as procedural does not give sufficient consideration to this principle, and notions of justice and fair play in a particular case are always germane.

In the instant case respondents admit that had appellant's arrest been after September 28, 1973, the effective date of the original arrest records statutes, they would be precluded from obtaining or using the information concerning the arrests. The inequity in drawing an adverse inference concerning the character of one applicant because of groundless arrests occurring more than 14 years ago, while absolving another with a more recent arrest history, offends our notion of justice and fair play.

In holding sections 610.100—610.120 to be prospective only the trial court expressed its reliance on *Warren v. State*, 632 S.W.2d 67 (Mo.App.1982), in which this court upheld the denial of a motion filed by a penitentiary prisoner to expunge records of his arrests which had not resulted in convictions and which had occurred prior to the effective date of the statutes. The motion in Warren was based upon sec. 610.-100, RSMo.1978, which provided for the

expungement of such records. "Expunge" required destruction, obliteration, physical annihilation. *Bergel v. Kassebaum*, 577 S.W.2d 863, 871 (Mo.App.1978). To require every court and law enforcement agency in Missouri to physically destroy or obliterate the record of every arrest not resulting in conviction which had occurred since records were first kept would be an administrative nightmare of mammoth proportions. The overwhelming effect upon administrative facilities serves to supply the legitimate state interest warranting a distinction between pre–1973 and post–1973 records. *See Belton v. Board of Police Commissioners of Kansas City, Missouri*, 708 S.W.2d 131, 139–40 (Mo.1986).

However, in 1981 the arrest records statutes underwent a major revision. Expungement provisions were totally eliminated. Arrest records which would have been subject to destruction or obliteration under the predecessor law are now "closed records," maintained but inaccessible to the general public and confidential except to the defendant, and to courts, administrative agencies, and law enforcement agencies for the limited purposes of prosecution, litigation, sentencing and parole considerations. Sec. 610.120, RSMo.Cum. Supp.1984. Thus, attention is now focused not upon the existence of the record of an arrest not resulting in conviction, but rather upon the accessibility and the use of such a record. The legislative intent, to prevent the abusive use of groundless arrests and meritless charges, is accomplished by restricting public access to arrest records, an administrative task much less burdensome than destruction or obliteration of hundreds of thousands of antiquated documents. Indeed, in the instant case, the arrest record information obtained from the Regional Justice Information Service by a St. Louis County Police officer on behalf of the PSAC was clearly marked "CONFIDENTIAL INFORMATION RESTRICTED TO CRIMINAL JUSTICE AGENCIES." Accordingly, in view of the 1981 revision of the arrest records statutes, we are unable to discern any legitimate state interest which would justify disparate treatment of an arrest record predicated solely upon the date of the arrest. No reasonable explanation has been advanced to show why pre-enactment arrest records should be public and post-enactment arrest records confidential except for limited purposes, in the absence of any administrative requirements of an overwhelming nature. Responding to our responsibility to seek a statutory construction "which avoids unjust or unreasonable results and gives effect to the legislative intent," *St. Louis Police Officers Association v. Sayad*, 685 S.W.2d 913, 918 (Mo. App.1984), and recognizing the "basic maxim of statutory construction [which] requires that a court faced with a constitutional challenge to a statute must, if possible, construe it in favor of constitutionality," *Lincoln Credit Company v. Peach*, 636 S.W.2d 31, 35 (Mo. banc 1982), we are constrained to hold that secs. 610.100—610.120, RSMo.Cum.Supp.1984, by unavoidable implication, must be given retrospective as well as prospective operation. To distinguish between pre-enactment and post-enactment arrests would make the statutes unconstitutional as a denial of equal protection without a rational relation to some legitimate state interest. Because of the change in the law, from expungement to closure of arrest records, *Warren v. State, supra,* is not controlling here.

■ As we have noted, sec. 610.120 seeks to accomplish the legislative purpose of preventing the injustice which may result from publication of information regarding groundless arrests and unfounded charges by restricting access to such records and by limiting use of the information contained therein. Under the statute, the St. Louis County Police Department, and its private security advisory board were, as law enforcement and administrative agencies, within the scope of those to whom closed records were available. Thus the disclosure of the arrest records to an authorized agency marked "CONFIDENTIAL INFORMATION RESTRICTED TO CRIMINAL JUSTICE AGENCIES" was

not a violation of the statute.[1] Rather, it was the acquisition and use of the information for a purpose other than "prosecution, litigation, sentencing, and parole considerations" which was in contravention of sec. 610.120.

Within the scope of judicial review of a contested case before an administrative agency, as delineated in sec. 536.140, is a determination of whether the action of the agency is supported by competent evidence. The evidence of appellant's pre-1973 arrests was before the agency in contravention of the statute and was therefore not competent. To hold otherwise would amount to a judicial stamp of approval upon a violation of the arrest record statutes. To permit evidence of groundless arrests to be used as a factor in denying an application for a license necessary to employment would thwart the very purpose of the legislation.

We attribute no significance to the fact that appellant's application was denied because he falsified his answers to questions concerning arrests rather than because of the arrests themselves. It is the use of the arrest information for a purpose unauthorized by law which renders the evidence incompetent. Whether it served as the direct basis of the denial or indirectly as proof of false answers warranting denial, consideration of the closed arrest records in connection with a watchman's license application violates the letter of the law and the policy underlying its enactment.

We are not unmindful of respondents' arguments that the police powers of state and local governments warrant access to arrest records regarding an application for a watchman's license as such an occupation affects public safety and welfare. The General Assembly has seen fit to allow access to such records only for the purposes of prosecution, litigation, sentencing and parole. Any extension of the purpose for which closed arrest records may be obtained and used is a matter for legislative, not judicial, action. Accordingly, the judgment of the trial court affirming the action of the St. Louis County Private Security Advisory Committee is reversed and the trial court is directed to remand the matter to the St. Louis County Private Security Advisory Committee for consideration of appellant's application without regard to any record of arrest not resulting in conviction.

SMITH and REINHARD, JJ., concur.

---

1. The arrest history obtained through the Regional Justice Information Service showed three arrests resulting in five charges, all marked with the "CONFIDENTIAL" inscription. Another record check with the Missouri State Highway Patrol reported only one charge with no restrictive inscription and no information regarding disposition. The charge shown on this latter report merely duplicated one reported by REJIS with the restrictive caveat and the fact that the charge was "withdrawn" on the day after the arrest.