STATE of Missouri, ex rel., CITY OF SPRINGFIELD, City of Fulton and City of Granby, Appellants,

v.

PUBLIC SERVICE COMMISSION of the STATE OF MISSOURI, Respondent.

No. WD 43828.

Missouri Court of Appeals, Western District.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied Sept. 10, 1991.

Gary W. Duffy, Jefferson City, for appellants.

William Shansey, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

FENNER, Judge.

This is an appeal from a circuit court judgment affirming an Order of Rulemaking of the Respondent, Missouri Public Ser-

vice Commission (Commission). The Commission's Order of Rulemaking in question here sets forth new and amended gas safety rules (New Rules). The appellants all operate municipal gas utilities which, in accordance with the language of § 386.-310.1, RSMo Supp.1990, are subject to the safety and health rulemaking authority of the Commission.

In this appeal, appellants argue that the New Rules are not applicable to them on constitutional grounds and because the Commission failed to follow the requisite statutory rulemaking process.

■ In their first point, appellants argue that the New Rules require either new activity or service or an increase in activity, or all of the same, in violation of the provisions of what is commonly known as the Hancock Amendment, consisting of Mo. Const. Art. X, §§ 16 through 24.

Appellants argue specifically that the New Rules are in violation of Mo. Const. Art. X, § 21, which provides as follows:

The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

A violation of Mo. Const. Art. X, § 21, exists only if both (1) a new or increased activity or service is required of a political subdivision by the state and (2) the political subdivision experiences increased costs in performing that activity or service. *Miller v. Director of Revenue*, 719 S.W.2d 787, 788–89 (Mo. banc 1986).

There is no dispute that the New Rules increase the frequency of inspections, replacements, testing, record keeping and other activities of gas utilities, including municipal gas utilities, with increased cost to the utilities but without appropriation from the state to pay the increased cost. However, the operation of a gas utility is a discretionary function of a municipality which can also be undertaken by private interests.[1] It is not a service required of a municipality to be funded by tax dollars.

The purpose which appears in the whole plan of utility operations is to place municipal utilities on the same basis as investor owned utilities. *Pace v. City of Hannibal*, 680 S.W.2d 944, 948 (Mo. banc 1984). A public utility, whether investor owned or publicly owned, requires a franchise to operate. *Id.*

Gas utilities are subject to regulation by the Public Service Commission. § 386.-250(1) and (5); §§ 393.110–393.295, RSMo 1986.[2] Among its supervisory and regulatory functions, the Public Service Commission generally fixes rates for gas utilities. § 393.140(11); § 393.150. However, municipal utilities are free to determine and set rates without being subject to the rate making process of the Commission. *Shepherd v. City of Wentzville*, 645 S.W.2d 130, 133 (Mo.App.1982).

■ Municipal utilities are governed by a Board of Public Works pursuant to § 91.450, or as established by City Charter. The rate a governing body of a municipal utility is allowed to charge is not in the nature of taxation, which is a demand of a sovereignty; but is in the nature of a toll, which is a demand of a proprietorship. *St. Louis Brewing Ass'n v. City of St. Louis*, 140 Mo. 419, 37 S.W. 525, 528 (1896); see also, *Shepherd v. City of Wentzville*, 645 S.W.2d 130, 134 (Mo.App.1982). Taxes are enforced contribution from corporations, persons and property, levied by the state by virtue of its sovereignty, for the support of government and for all public needs. But utility rates, including those of a municipal utility, are imposed and collected merely as compensation to be paid for the commodity received by an individual cus-

---

1. Chapter 91, RSMo 1986, establishes authority for municipal ownership of utilities.

2. All statutory references are to RSMo 1986, unless otherwise specifically stated.

tomer of the utility. *St. Louis Brewing Ass'n v. City of St. Louis,* 37 S.W. at 528.

■ Operation of a municipal utility is not an activity required of government to serve public needs. It is a discretionary function often undertaken by private interests. Increased costs to a municipal utility are not a drain on general revenue, but are charges against the customers of the utility. The charges of a municipal utility are not in the nature of taxation.

The imposition by the Commission of new and amended safety rules, against municipal utilities, does not violate the Hancock Amendment even when the rules increase the utilities' activity, service and costs. The increased costs do not affect the municipality's tax structure by increasing the cost of operating government and impose no additional burden upon the taxpayers.

Appellants' first point is denied.

In their second point, appellants argue that the Commission acted unlawfully and the circuit court erred in affirming its decision in that the Commission's Order of Rulemaking requires appellants to undertake leak investigation surveys of customer-owned facilities not owned or installed by appellants and bans future installation of customer-owned service and yard lines.

■ Appellants argue first, under their second point, that requiring them to undertake leak investigation surveys of customer-owned lines is beyond the jurisdiction of the Commission.

A number of statutory sections address this issue. Section 386.250, RSMo Supp. 1990, subsections (1) and (5) provide, in pertinent part, that the jurisdiction, supervision, powers and duties of the Commission extend to the manufacture, sale or distribution of gas and to persons or corporations owning or controlling the same and to all public utility corporations. Section 386.250(6), RSMo Supp.1990, specifically authorizes the adoption of rules which prescribe the conditions of rendering public service. Section 386.310, RSMo Supp.1990, authorizes the Commission to promulgate safety rules effective against municipal gas systems and public utilities among others. In pertinent part, § 386.310.1, RSMo Supp. 1990, authorizes the Commission to "... require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand, ...."

Pursuant to the foregoing statutory sections, it is reasonable for the Commission to require gas utilities to inspect customer lines in the interest of public safety. The Commission acted within its statutory authority by so ordering.

■ Appellants next argue, under their second point, that the Commission was without authority to prohibit, as of the effective date of its New Rules, future customer-owned service and yard lines. Appellants argue that this rule conflicts with municipal ordinances which require customer-ownership of service lines, violates Article I, § 13, of the Missouri Constitution and is an unconstitutional taking of property.

■ As noted previously herein, the Commission has statutory authority to adopt safety rules effective against public utilities in the interest of utility employees and customers. § 386.310.1, RSMo Supp. 1990. Duly promulgated rules of a state administrative agency have the force and effect of law. *Missouri National Education Association v. Missouri State Board of Mediation,* 695 S.W.2d 894, 897 (Mo. banc 1985). Municipal ordinances regulating subjects, matters and things upon which there is a general law of the state must be in harmony with the state law. *Frank v. Wabash Railroad Company,* 295 S.W.2d 16, 21 (Mo.1956).

The safety rules of the Commission take precedent over conflicting municipal ordinances. Appellants' argument that they are entitled to relief because of conflict between the New Rules and municipal ordinances is denied.

■ Under their second point, appellants argue further that the Commission's ban of customer-owned service and yard lines is in violation of the Constitution of Missouri, Art. I, § 13.

■ Article I, § 13, Mo. Const., prohibits the enactment of any law "retrospective in its operation." Retrospective or retroactive laws are generally defined as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already passed. *Martin v. Schmalz*, 713 S.W.2d 22, 23 (Mo. App.1986). (citations omitted.) A law is said to be retroactive only when it is, applied to rights acquired prior to its enactment. *Id.*

The rule prohibiting customer-ownership of service and yard lines is applicable only from the effective date forward and does not violate Art. I, § 13, Mo. Const.

■ In the final argument, under their second point, appellants argue that the rule prohibiting customer-ownership of service and yard lines constitutes an unconstitutional taking of appellants' property. The only authority appellants cite for this argument is *State ex rel. Southwestern Bell Telephone Company v. Public Service Commission*, 416 S.W.2d 109 (Mo. banc 1967).

In the *Southwestern Bell* case, the Supreme Court held that an order of the Commission directing the telephone company to provide service in an area where it had not professed to provide service was an unconstitutional taking of private property. The court reasoned that the company could not be required to use its property in a service to which the owner had not voluntarily dedicated it.

The *Southwestern Bell* case is clearly distinguishable from the case at bar in that appellants are not being required to provide service outside the area that they have sought the right to serve. In the case at bar, the Commission is exercising its authority to regulate the activities of appellants within their respective service areas.

Appellants' argument that the Commission's rule prohibiting future customer-owned service and yard lines constitutes an unlawful taking of appellants' property is without merit.

■ In their third point, appellants argue that the circuit court erred in affirming the Commission's decision because the Commission's Order of Rulemaking is void due to the Commission's failure to state an explanation of and the reasons for the proposed changes in the Notice of Proposed Rulemaking as required by § 536.021.2(1).

Section 536.021.1 requires that before making, amending or rescinding a rule the Commission must first file with the secretary of state a notice of proposed rulemaking. Section 536.021.2 requires that the notice of proposed rulemaking shall contain:

(1) An explanation of any new rule or any change in an existing rule, and the reasons therefor;

(2) The legal authority pursuant to which the rule is proposed to be made;

(3) The text of the entire rule proposed to be made ...;

(4) The number and general subject matter of any rule proposed to be rescinded;

(5) Notice that anyone may file a statement in support of or in opposition to the proposed rulemaking ...;

(6) Notice of the time and place of a hearing on the proposed rulemaking if a hearing is ordered,....

The Commission proposed two Rules in the case at bar, 4 CSR 240–40.020 and 4 CSR 240–40.030. The Rules were prefaced with purpose sections as follows:

4 CSR 240–40.020 Incident and Annual Reporting Requirements

PURPOSE: This rule prescribes requirements and procedures for reporting certain natural gas related incidents and for filing annual reports. It applies to gas corporations and municipal gas systems subject to the safety jurisdiction of the Public Service Commission.

4 CSR 240–40.030 Safety Standards—Transportation of Gas by Pipeline

PURPOSE: This rule prescribes minimum safety standards regarding the design, fabrication, installation, construction, metering, corrosion control, operation, maintenance, leak detection, repair

and replacement of pipelines used for the transportation of natural and other gas.

■ The purpose sections of the proposed rules provided an explanation of the general subject matters covered by the rules and specified that the proposed rules related to safety practices and procedures. Furthermore, the purpose of the notice procedure for a proposed rule is to allow opportunity for comment by supporters or opponents of the measure, and so to induce a modification. *St. Louis Christian Home v. Missouri Commission On Human Rights,* 634 S.W.2d 508, 515 (Mo.App.1982). The record does not reflect that appellants suffered any detriment in their ability to participate in or react to the rulemaking process as a result of their complaints under this point.

Appellants' third point is denied.

■ In their fourth point, appellants argue that certain of the provisions of the New Rules adopted by the Commission are unconstitutionally void for vagueness.

■ As previously noted in this opinion, duly promulgated rules of a state administrative agency have the force and effect of law. *Missouri National Education Association v. Missouri State Board of Mediation,* 695 S.W.2d at 897. A statute or law is presumed constitutional and will not be held otherwise unless it clearly contravenes some constitutional provision. *Prokopf v. Whaley,* 592 S.W.2d 819, 824 (Mo. banc 1980). In order to have standing to challenge a statute or administrative rule on constitutional grounds, a party must show not only that the statute or rule is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement. *Harrison v. Monroe County,* 716 S.W.2d 263, 266 (Mo. banc 1986).

Appellants argue that 14 separate provisions within the New Rules are unconstitutionally vague. Appellants do not represent that any of the "vague" provisions either have been or are threatened to be enforced against them to their detriment. At best, appellants express concern that they may be held to be in violation at some point in the future because they are not able to interpret and comply with the provisions of which they complain. Appellants have not shown that they have standing to attack the New Rules on constitutional grounds.

Appellants' fourth point is denied.

■ In their fifth point, appellants argue that the Commission acted unlawfully and the trial court erred by affirming the Commission's decision in that the Commission's Order of Rulemaking contains interpretations of law or policy as to certain provisions within the Order which interpretations are invalid. Appellants argue that the interpretations are invalid because they were not adopted as rules in accordance with § 536.021.

■ The power to make rules includes the power to alter them and to determine any reasonable policy of interpretation and application of such rules. *State ex rel. Dail v. Public Service Commission,* 240 Mo.App. 250, 203 S.W.2d 491, 497 (1947). The Commission does not argue that its interpretations of certain of the New Rules rise to the level of rules themselves. The interpretations were provided in response to questions and concerns raised pursuant to the Commission's Notice of Proposed Rulemaking. The interpretations act as guidance to interested parties. The interpretations were not incorporated into the rules and do not constitute rules themselves. The fact that interpretations were provided in no way renders the New Rules invalid.

Appellants' fifth point is denied.

■ In their sixth and final point, appellants argue that the Commission acted unlawfully in adopting the New Rules and the circuit court erred in affirming the decision of the Commission because the Commission's Order of Rulemaking was invalid in that the Commission failed to send a copy of the Order of Rulemaking to all effected parties as required by § 386.490, RSMo 1986.

Several statutes are relevant to this point. First of all, § 386.490, RSMo 1986, relates to the procedure for contested hear-

ings before the Commission. See §§ 386.-390–386.610, RSMo 1986. Section 386.-490.1, RSMo 1986, requires that orders of the Commission shall be served on every person or corporation to be effected thereby. The purpose of § 386.490.1, RSMo 1986, is to allow effected parties the opportunity to request rehearing and review of the Commission's Orders in accordance with the provisions of § 386.500, RSMo 1986 (Rehearing before commission) and § 386.510, RSMo 1986 (Review by circuit court).

Furthermore, § 386.610, RSMo 1986, provides that the provisions of Chapter 386, RSMo 1986, are to be liberally construed and that substantial compliance with the provisions of Chapter 386, RSMo 1986, is sufficient. On the other hand, § 536.021 relates specifically to the procedure applicable to state agencies when making, amending or rescinding rules.

A Rule is defined as an "... agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of an agency." § 536.010(4), RSMo 1986. The term "rule" as used in Chapter 536, RSMo 1986, does not include a determination, decision or order in a contested case. § 536.-010(4)(d), RSMo 1986. A "contested case" is defined under § 536.010(2), RSMo 1986, as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing."

In accordance with § 536.021.1, notice of proposed rulemaking and a subsequent order of rulemaking are to be published in the Missouri Register. Section 536.021.6, directs that rules of state agencies are void unless made in compliance with § 536.021.

The Commission complied with the statutory requirements applicable to notice of proposed rulemaking and for the subsequent order of rulemaking by publication of said notice and order in the Missouri Register as specifically required by § 536.-021.1. The Commission was not required to send a copy of the Order of Rulemaking

to all effected parties as argued by appellants.

Appellants' sixth point is denied.

The judgment of the circuit court is affirmed.

All concur.